Application of Robert M. B. TALFORD

v.

Lt. General Johnathan O. SEAMAN, Commanding General of the First Army of the United States, Fort George Meade, Maryland and Stanley Resor, Secretary of the Army, and Melvin Laird, Secretary of Defense, Pentagon, Washington, D. C.

Civ. No. 21013.

United States District Court
D. Maryland.

Nov. 5, 1969.

William H. Zinman, Baltimore, Md., for plaintiff.

Stephen H. Sachs, U. S. Atty., and Alan B. Lipson, Asst. U. S. Atty., District of Maryland, for defendants.

FRANK A. KAUFMAN, District Judge.

In this habeas corpus proceeding, Talford, a Private in the United States Army, claims that he is entitled to discharge from the Army, as a conscientious objector, pursuant to Department of Defense Directive No. 1300.6 (D.O.D.), dated May 10, 1968, as amended by Change 1, dated December 20, 1968, and Army Regulation 635-20, dated December 3, 1968 (A.R.). Talford, born in 1943, reared and educated in South Carolina, a university graduate with B.A. and M.S. degrees, and an elementary school teacher prior to his being called into the armed services, was inducted on July 23, 1968. Thereafter, in November, 1968, he sought a discharge from the Army on the ground that, after his mother's death in February, 1967 and prior to his induction, he was the head of his household, and substantially assumed responsibility for the care of his father and his thirteen-year old brother. His request was disapproved in January, 1969 on the ground that he was not "the only readily available means of eliminating or alleviating the existing conditions in [his] family."

In March, 1969, after having received basic training at Fort Jackson, South Carolina and further training at Fort Sam Houston, Texas and after his arrival at Oakland, California with orders calling for service in Viet Nam, Talford filed a request for discharge under A.R. 635-20 as a conscientious objector. By that time, he had been assigned duty as a medic. In his application, Talford, noting that he had been a lifelong member

of the African Methodist Episcopal Zion Church and had been reared by his mother, who was the director of his church school, to obey the Golden Rule and the Commandment, "Thou shall not kill," wrote, *inter alia*:

Prior to my induction I had given passive attention to the question of war and peace because I was not involved and therefore not required to make the choice relating to war and peace. The separation from the familiar and the challenge of war has resulted in some serious introspection: me, who am I and why am I here. In my search for answers and understanding I have sought the help of the lord and seriously read the Ten Commandments. I have struggled with these positions, war and peace, and I have decided that I cannot permit myself to share in the negative aspects of war. The taking of men's lives and the crippling of their bodies and minds. War also make it necessary to deprive men of their freedom. The revelations or teaching of God does not condone war and will hold me responsible if I do not do what I understand to be his will. The will of God in this situation is given in the commandment "thou shall not Kill"

My beliefs began to crystallized when I was told that I was a killer. I was taught that "thou shall not Kill". Therefore this statement deeply troubled me because I have always obeyed the laws of my country. Now I have to decide which law is supreme. Another statement which caused conflict with in me was: "a medic's duty is to conserve the fighting strength". How can I obey the teachings of God and help a man get well so he can kill or be killed attempting to kill another human being.

\* \* \* \* \* \*

I have always been a law abiding citizen. Therefore, when I was confronted with the draft I accepted it because God did not show me any other alternative. At the time of my induction I was not aware of the 1-0 status. Before I was drafted I was ask to apply

for the Army Reserve, but I could not volunteer for and organization that was in conflict with the teachings of God, and the way I was trying to live. But the statements that I am a killer, and my purpose is to conserve the fighting strength real crystallized my beliefs. The way some fellows bragged about how they were looking forward to killing and the experienced soldier telling how they killed only deepened by belief in my teachings.

\* \* \* \* \* \*

I cannot say that I will never use force, but during my adult life I have never come into a situation where I could not find a better way than violence. Violence only bring temporary changes. Teaching bring about permanent changes by changing ideas.

Within a few days after he instituted proceedings seeking his discharge as a conscientious objector, Talford was interviewed by a chaplain (an Army Major) who reported:

1. PVT E-2 Robert M. Talford, US 53 614 304, was referred to me for consultation regarding his application for classification as Conscientious Objector, 1-0.

2. PVT Talford is a member of the African Methodist Episcopal Zion Church, (AMEZ). He states that he has been a faithful member of the church since his early youth. He is a graduate of Johnson C. Smith College, Charlotte, North Carolina and taught elementary school prior to entering the Armed Services.

3. The serviceman decided to apply for 1-0 status while in Medical Training at Fort Sam Houston, Texas. He reached this decision after talking with others and much personal reflection upon the role he would be required to fill in the military service.

4. It is my sincere opinion that his request is based upon his personal conviction and moral code in relation to his interpretation of the meaning of the religious training. He expresses sincerity in his conviction and desire

for a nonviolent role even to the point of not giving support to any violent action.

Accompanied by his civilian attorney, Talford was interviewed by Captain Eagan, a Staff Judge Advocate, who commented:

a. Private Tolford [sic] states that his family has always been very religious. His uncle is a minister and his sister is married to one. His mother was the Superintendent of Sunday Schools and was his religious teacher. Private Tolford was taught that if you ask God for something you must do what He tells you to do. He believes that if he continues to serve in the military he will be disobeying what God has told him to do in order to be saved. Private Tolford states that he is a member of the African Methodist Episcopal Zion Church, which opposes fighting, quarreling, alcohol, and gambling, among other things. He has been a member of this Church since 1956. Private Tolford sees the purpose of the military as killing and was always taught "Thou shalt not kill."

b. Private Tolford states that he never really thought about the service before he came in. He knew, however, that he was trying to live a christian life, and states that if he had known what the service was like before he came in, he would have applied as a conscientious objector.

c. Private Tolford feels that nothing is accomplished by force. Nothing real in gained. He feels that everybody's life is their life—good or bad—and it is not for him to decide who should live or die.

d. Private Tolford was inducted on 23 July 1968. He took basic training at Fort Jackson, South Carolina, and AIT at Fort Sam Houston, Texas. His MOS is Medic 91A10. He arrived at Oakland on 7 March 1969 and filed this application on the same day. He received his orders for Viet Nam sometime in November of 1968. He states that he tried to submit an application

for discharge at Fort Sam Houston, but that they would not accept it.

e. Private Tolford feels that as a Medic, conserving the fighting strength, he is trained to save someone to kill or be killed and is therefore helping to break a commandment.

3. In my opinion, Private Tolford's beliefs became fixed before entry into the military service, and as such must fall within the provisions of para 3(b)(1), AR 635-20. Accordingly, I recommend that his application for discharge as a conscientious objector be denied.

It is to be noted that Captain Eagan did not comment on the sincerity or lack of sincerity of Talford's beliefs. Neither did the Army psychiatrist who, after examining Talford, found "no evidence here of a psychotic or neurotic process" and made no comment on the merits of the application for discharge as a conscientious objector. Thus, only one of the three persons who personally talked with Talford commented on whether his views were sincerely held, and that one person, the chaplain, found Talford's belief to be sincerely based.

Talford's commanding officer who reviewed his application forwarded it with the following notation:

Recommend disapproval. It is felt that Private Talford's application is based on sincere religious beliefs which became fixed prior to entry into military service.

The three members of the Review Board also recommended disapproval, one of them commenting that Talford "fails to be sincere," and that the "Chaplain engages in double talk"; a second, that Talford's "religious beliefs have not changed since induction," that "[h]e states he is not opposed to all force," and that "he is trying this road after trying for a hardship discharge and failing"; and a third, that Talford's "beliefs became fixed before entry into the military service" and were based on "personal conviction and morale [sic] code." The latter also noted Talford's statement that

**944**

he could not say "he would never use force."

On April 15, 1969, the Reviewing Officer recommended that Talford's application be disapproved because "[a]pplication fails to show sincerity and indicates applicant's views became fixed prior to entry into service." The Adjutant General used the same words on April 16, 1969 when he disapproved Talford's request for conscientious objector status.

In his complaint in this case, Talford alleges he did not receive notification of the denial of his request for conscientious objector status until May 5, 1969 and on that same date received orders to report at Oakland on May 6, 1969 for shipment to Viet Nam; that on May 6, 1969, after he consulted, on May 5, 1969, a San Francisco attorney who advised him of the import of Craycroft v. Ferrall, 408 F.2d 587 (9th Cir. 1969), he requested review by the Army Board for the Correction of Military Records.

On May 20, 1969, Talford instituted a habeas corpus proceeding in the United States District Court for the Northern District of California, seeking his discharge from the Army as a conscientious objector. However, when the case came on for hearing in that proceeding, Talford failed to appear and the Court took no action for that reason.[1] Thereafter, plaintiff voluntarily surrendered himself to the Army, was incarcerated at Fort Meade, Maryland, and instituted this proceeding. Since that time, the Board for the Correction of Military Records has denied Talford's appeal.[2] Further, the Army has informed this Court that it does not wish to raise the issue of whether Talford has, in fact, been granted noncombatant status (1–A–0) pursuant to Army Regulation 600–200 and is therefore not entitled to outright release under A.R. 635–20.[3] In addition, the Army has, prior to the date of the filing of this opinion, released Talford from confinement in the stockade at Fort Meade and has informed this Court that if petitioner is granted relief herein, the Army will not pursue court-martial proceedings against Talford for going AWOL.

Examining the applicable tests and standards, this Court concludes Talford is entitled to his discharge as a conscientious objector. In so holding, this Court in no way condones Talford's going AWOL and his failure to appear in the California proceedings instituted by him. But despite those actions, Talford is entitled to the relief he seeks herein if there is no basis in fact for the Army's failure to classify him as a conscientious objector under its own regulations. United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4th Cir.), rehearing denied, 412 F.2d 1137 (4th Cir. 1969).

Talford's views are founded on religious beliefs, under the definition of religion set forth in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.

1. In his complaint, petitioner alleges that, after May 6, 1969, he

had been informed that he would immediately receive orders to report to the combat zone of Vietnam for further duty and would immediately be forcibly transferred and transported to such duty. The Petitioner was also informed at that time, and thoroughly believes that other Army personnel have been summarily and forcibly transferred to said Combat Zone despite ·the fact that their applications to the Board for Correction of Military Records were pending, and despite their alleged conscientious objector beliefs.

2. That exhaustion of petitioner's administrative remedies, while required by Cray-

croft v. Ferrall, 408 F.2d 587 (9th Cir. 1969), is not necessary in this Circuit. United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4th Cir.), rehearing denied, 412 F.2d 1137 (4th Cir. 1969).

3. See Quaglia v. Boswell, sub nom. Reitemeyer v. Mc Crea et al., 302 F.Supp. 1210 (D.Md.July 14, 1969). That opinion involves four habeas corpus petitions. An appeal is pending in the Fourth Circuit from this Court's denial of relief to Quaglia, one of the four petitioners. No appeal has been filed from the grant of relief to two of the other four petitioners and the denial of relief to the third of the said other four petitioners.

2d 733 (1965); United States ex rel. Brooks v. Clifford, *supra*; Fleming v. United States, 344 F.2d 912 (10th Cir. 1965); and Reitemeyer v. Mc Crea et al., 302 F.Supp. 1210 (D.Md. July 14, 1969). Those views also add up to opposition to participation in war in any form. Talford's candid, single, isolated statement that he "cannot say that I will never use force" does not in any way contradict his opposition to war in any form. One does not have to be a Gandhi—a man who will not individually resist under any circumstances—in order to qualify as a conscientious objector under the applicable military regulations. *Cf.* United States v. James, 417 F.2d 826 (4th Cir. June 26, 1969), and cases cited thereat.

Further, there is no basis in fact for finding that Talford's views are not sincerely held. No one who personally interviewed him questioned his sincerity. Conversely, as has been pointed out above in this opinion, the only person who personally interviewed Talford and who commented on his sincerity found that quality present. *See* United States v. Seeger, *supra* 380 U.S. at 185, 85 S.Ct. 850; Witmer v. United States, 348 U.S. 375, 381–383, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Reitemeyer v. Mc Crea et al., *supra*.

There remains the issue of whether Talford's views became fixed before entry into the service. Captain Eagan—and others who did not personally interview Talford—so found. But there is no explanation by any of them of why they did not accept Talford's explanation of the development and culmination of his views. If, as the chaplain wrote, Talford's beliefs are sincerely held, then his statements of how those beliefs changed after his period of service commenced cannot be brushed aside without some statement of reason or some factual underpinning. The mere conclusory remarks of Captain Eagan, and of others who did not personally talk with Talford, that the latter's views became fixed before entry into the service, will not suffice. *Cf.* United States ex rel. Tobias v. Laird, 413 F.2d 936 (4th Cir. 1969);

Reitemeyer v. McCrea et al., *supra*. There is nothing in the record to controvert Talford's statements that he did not realize the incompatability of his religious beliefs and war in any form, until after his entry into the service.

Talford's petition is hereby granted. If the Army does not (a) file an appeal from this Court's holding herein to the Fourth Circuit within the time provided for such appeal, and (b) thereafter diligently prosecute that appeal, the Army should grant the appropriate discharge; otherwise, this Court will issue a writ of habeas corpus requiring Talford's discharge.