**UNITED STATES of America ex rel. Mark P. SHELDON, Appellant,**

**v.**

**Major General Charles S. O'MALLEY, Jr., Commanding General, Military District of Washington, et al.**

**No. 23202.**

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 29, 1969.

Decided Dec. 19, 1969.

Mr. David Rein, Washington, D. C., with whom Mr. Joseph Forer, Washington, D. C., was on the brief, for appellant. ·

Miss Mary E. Folliard, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellees. Mr. Harold H. Titus, Jr., Principal Asst. U. S. Atty., also entered an appearance for appellees.

Before WILBUR K. MILLER, Senior Circuit Judge, McGOWAN and ROBB, Circuit Judges.

McGOWAN, Circuit Judge:

This appeal is from an order of the District Court denying *habeas corpus* relief to an Army officer seeking discharge from the service as a conscientious objector. The case was heard upon appellees' return to an order to show cause, in which return appellees moved the dismissal of the petition for the writ for want of subject matter jurisdiction or, alternatively, for failure to state a cause of action. The District Court, in a bare order which made no reference to these alternative claims, dismissed the petition. For the reasons set forth hereinafter, this was error; and we reverse.[1]

## I

In September of 1967 appellant enlisted in the Army, and entered upon active duty early in 1968. He successfully applied for Officers' Candidate School, and emerged from that in November of 1968 as a second lieutenant in the infantry. While serving at Fort Knox as an infantry training officer, appellant asked for a psychiatric examination, which resulted in his being classified by a Medical Board as unsuited for combat. As suggested by his Battalion Commander because of this restriction, appellant sought a transfer to another branch, but his application to this end was denied, and orders were issued assigning appellant to Viet Nam for noncombatant duty.[2] While on leave pending shipment abroad, appellant filed with the Military District of Washington at Fort McNair an application for discharge from the Army as one who had become a conscientious objector after enlistment.

Army Regulation No. 635–20, issued January 22, 1969, under the authority of Department of Defense Directive 1300.6, dated May 10, 1968, embodies the policies and procedures to be observed in the case of "military personnel who, by reason of religious training and belief, claim conscientious objection to participation in war in any form." The general policy is stated to be that consideration will be given to separation requests "when such (conscientious) objection develops subsequent to entry into the active military service." But it is also said that "[r]equests for discharge after entering military service will not be accepted when—

\* \* \* \* \* \*

(3) Based on essentially political, sociological, or philosophical views, or on a merely personal moral code.

---

1. The assertion of a lack of subject matter jurisdiction was derived from appellant's failure to apply to the Army Board for Correction of Military Records for relief after his discharge was denied. 10 U.S. [C.] § 1552. Subsequent to the entry of the District Court's order, appellant made such an application, which was denied after appellees' main brief was filed in this appeal, pressing the necessity of the exhaustion of administrative remedies as a condition of *habeas* jurisdiction. By a supplemental brief filed shortly before argument, the Government advised us not only of appellant's application and its denial, but also of the Government's independent abandonment of the contention that such action was necessary to clothe the District Court with subject matter jurisdiction. *See* United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4th Cir. 1969), with which compare Craycroft v. Ferrall, 408 F.2d 587 (9th Cir. 1969). But *see* the Ninth Circuit's later decision in Krieger v. Terry, 413 F.2d 73 (1969).

2. A stay of the execution of these orders pending appeal was denied by the District Court, but such relief was granted upon application to this court.

* * * * * *

As contemplated by the procedure prescribed in AR 635–20, appellant was interviewed by an Army chaplain, an Army psychiatrist, and an officer "in the grade of 0–3 or higher, who is knowledgeable in policies and procedures relating to conscientious objector matters." Their findings and recommendations were made part of appellant's application file, which was forwarded to the Adjutant General at Army Headquarters in Washington. There it was reviewed by a board of three officers, and thereafter the Adjutant General notified appellant that, "by order of the Secretary of the Army," his application was disapproved. The reason given was that "[e]vidence presented indicates your objection to service is based upon a personal moral code and is politically and sociologically oriented."

In his application, appellant related his upbringing in the Jewish faith, to which he continues actively to adhere. His answer to the query in the application form as to the basis of his claim of conscientious objection is set forth in full in the margin.[3] Elsewhere he represents his belief to be that moral force is the only kind of force in which he believes, because it "comes from God alone." Attached to his application are letters from two rabbis, including the leader of the congregation with which appellant has been affiliated throughout his life, testifying to the sincerity of his convictions, their direct derivation from his religious training and beliefs, and their legitimacy in terms of a Jewish religious tradition which, although "not exclusively pacifist in principle," contains within itself "a strong and authentic strand of thought * * * which supports conscientious objection to war and seeks to limit the exercise of violence of any kind. * * * "

There are letters from school and college teachers, and fellow students, of appellant who report his religious participation and sensitivity while under their observation, and who profess complete confidence in the sincerity of the conclusions to which his religious feelings have brought him. There is a letter from an Army officer—an Assistant Staff Judge Advocate at Fort Knox—who counseled appellant about the potentially serious consequences to himself entailed in his decision to persist in conscientious objection, and who concludes his letter by saying that "it is my opinion that his present actions are motivated by his strong personal and religious convictions of objection to participation in war."

The function of the Army psychiatrist who interviewed appellant once his ap-

---

3. A description of the nature of my belief which is the basis of my claim is my belief in the soul and the sense, in me, of the growth of my responsibility to God. This sense of growing responsibility is as important to me as breathing. It is the sense of the soul breathing in my thoughts, of God breathing in my life. Answering questions honestly means answering them myself. There is one God in Judiasm [sic], and one truth, God's Truth. Accepting anything but this Truth, for me, is rationalization. To rationalize is to worship idols, which, in Judiasm, is to break the covenant with God.

I went into the Army, and did not attempt to avoid it, because I received notice from my draft board and had questions about the world and my responsibility in the world. I was not a conscientious objector at the time. It is since I have been in military service that I have come to the conclusion that no thought justifies killing a human being. I have come to believe that only God should take the life of a human being. It is after being commissioned in the Infantry, and being assigned to Fort Knox as a Training Officer and being in contact with weapons and having as my mission to train individuals to kill, that I have come to the conclusion that serving in the military and killing men is not the way for me to express my responsibility to God and other human beings. I have come to the conclusion that being a part of the war effort in any way is contributing to the destruction of lives. Even noncombatant duty contributes to the mission of the military and gives tacit consent to its goals. Because of my beliefs I cannot and will not continue to serve in the military.

plication was filed was not to do more than make certain that he was free from psychiatric disease and capable of knowing what he was doing. He found that appellant was "mentally responsible, able to distinguish right from wrong and to adhere to the right, has the mental capacity to understand and participate in Board proceedings, and * * * is able to cooperate in his own defense." The interviewing Army chaplain recommended that appellant's application be granted; the basis for this recommendation was stated in these terms:

"I believe that he is completely sincere in declaring himself to be an objector to participation in any type of violence. It is my opinion that Lieutenant Sheldon, who is a sensitive person seeking to establish his own identity and purpose in life, has agonized between a desire to perform his obligation as a citizen and yet live in accordance with his own nature. I believe that his views crystallized when his military assignment as an officer training men for combat clashed with seeds of thought that had been implanted earlier, in his home, his synagogue, in Quaker camps he attended, and in his college. I believe that frustrated attempts to transfer to another Branch (other than his basic, Infantry) led to his growing conviction that he could not, in conscience, be a part of any war effort."

The third interviewing officer characterized appellant as giving "every evidence of being a very sincere and sensitive person * * * raised in a religious atmosphere * * *" and possessed of a Jewish-oriented higher education and training in philosophy "because of his close adherence to the faith of Judaism and his strong belief in God." This officer, however, found "the sudden onset of [appellant's] strong convictions" to be "perplexing." He thought that there might be more than coincidence in the crystallization of appellant's doubts after the denial of his branch transfer and his assignment to foreign service. Although he concluded that appellant strongly opposes war and military service," he doubted that that "opposition arises *solely* (emphasis supplied) from religious convictions and belief in God."

Each of the officers making up the reviewing board at Army Headquarters recommended disapproval. Two of such officers explicitly characterized appellant as "sincere" in the convictions he professed, and the third did not question that sincerity. Each, however, expressed the opinion that these convictions were founded upon a personal moral code rather than a religious feeling or belief. Two immediately coupled these expressions with a reference to appellant's motivation as residing in the circumstances of the branch transfer denial and the orders for Viet Nam.[4]

---

4. The three recommendations in full are as follows:

 Recommend disapproval. Evidence shows officer's beliefs based on personal moral code not religious beliefs. Documents indicate that this officer's objections are primarily based on denial of branch transfer and his assignment to RVN. As indicated in the Chaplain's statement and Interviewing officer.
 s/ [Signature illegible]

 Recommend disapproval.
 Application appears to be based on a sincere desire by Lt. Sheldon to do what he feels is absolutely right. I found Lt. Sheldon's request to be consistent throughout, based on the sequence of events in his life. It is my opinion, however, that the request is based on a personal moral code which prevents participation in killing individuals rather than on religious teachings of his faith.
 s/ J. F. Wood
 Maj. AEC
 13 June 1969

 Recommend disapproval.
 Even tho Lt. Sheldon is convincingly sincere in his opposition to war and killing, it does not appear to have grown out of his religious convictions. This statement is basically moral and is politically & sociologically oriented. His motivation for making application seems specifically prompted by his failure to get a branch transfer and his receipt of orders to Vietnam.
 s/ William Lyman Sale, Jr.
 Chaplain (CPT) USA

## II

Department of Defense Directive 1300.6, by reference to which AR 635–20 was issued, reflects a policy determination to extend to persons already within the armed services the rights of conscientious objection conferred by Congress upon those subject to the Selective Service Act. The relevant provision of that statute is Section 6(j) (50 U.S.C. App. § 456(j)) which, as revised June 30, 1967, is set forth in the margin.[5] Thus it is that judicial precedents involving claims to exemption from entry into military service because of conscientious objection are applicable to requests for discharge on the same ground by those who voluntarily entered the service.

 There is not now before us any dispute between the parties as to the propriety of *habeas* relief upon a proper showing. Neither are the parties in contention as to the standard by which a court is to weigh the disposition by the military of a claim to the status of a conscientious objector. That standard is the one now identified by Congress in the Selective Service Act of 1967 (50 U.S.C. App. § 460(b) (3)) as authorizing judicial scrutiny of draft classifications "only when there is no basis in fact for the classification assigned to such registrant." [6]

Appellant asserts that his file as it reached Army Headquarters was replete with proof that (1) his inability to serve longer in the Army consistently with his conscience was formulated in good faith and sincerely embraced, and (2) his conscientious objection was rooted in his religious training and beliefs, and rests, in the last analysis, upon the concept he entertains of the necessities of his relationship with God. The Government argues to us, contrarily, that there were "objective facts present here, *i. e.*, the timing of the application, the psychiatric history, and the transfer to Viet Nam [which] support the conclusions reached by the Army that [appellant's] claim, though enunciated sincerely, can be traced to his personal abhorrence of violence and emotional reaction to combat command." In other words, so we are told by the Government, although appellant is concededly sincere in his belief that he must oppose all participation on his part in the military, this objection derives not from religious instinct or conviction but from his innate disaffection with violence and his personal dissatisfaction with the turn taken by his military fortunes.

 The Supreme Court has long since declared, however, that the "ultimate question in conscientious objector cases is the sincerity of the registrant in objecting, on religious grounds, to participation in war in any form." [7] The Army, on the record before us, is in the anomalous position of accepting, in one breath, the sincerity of appellant's professed opposition to war on grounds of conscience but, in the other, asserting

---

5. "(j) Nothing contained in this title shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term 'religious training and belief' does not include essentially political, sociological, or philosophical views, or a merely personal moral code. * * *"

6. The standard first made its appearance in Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 90 L.Ed. 567 (1946). It was reaffirmed in the context of conscientious objection in United States v. Seeger, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965).

7. Witmer v. United States, 348 U.S. 375, 381, 75 S.Ct. 392, 396, 99 L.Ed. 428 (1955). And, more recently, the Court said in *Seeger*, note 6 *supra*:

"But we hasten to emphasize that while the 'truth' of a belief is not open to question, there remains the significant question whether it is 'truly held.' This is the threshold question of sincerity which must be resolved in every case. It is, of course, a question of fact —a prime consideration to the validity of every claim for exemption as a conscientious objector. * * *"

that appellant is motivated in reality by a distaste for contact with the violent side of military life. If the Army felt that such "objective facts" as the timing of the application and the issuance of the Viet Nam orders accounted for appellant's application, it should have said so in denying it—and issue would have been joined on the "ultimate question" of his sincerity. Instead, it represented to appellant that denial of his application was due to the fact that appellant's conscientious objection was "based upon a personal moral code," and was "politically and sociologically oriented." That is, perhaps, a more graceful way of telling appellant he was faking, but the message is the same.

We do not think that the conclusion reached and stated by the Army, when accompanied by a concession of appellant's sincerity, has the requisite basis in fact. The record contains a strong showing of the origins of appellant's conscientious objection in his lengthy history of religious training and experience, and in the doctrines of his faith. Appellant says that a tendency towards conscientious objection, latent in his religious background, took concrete shape only after close exposure to the realities of military life. The Army does not question the good faith of this assertion. It might have gone the other way, and bluntly stated its belief to be that appellant's objection was not to war or even to military service in all its forms, but only to his personal transfer to Viet Nam, even in a noncombatant capacity. But the Army did not do that, at least in express terms; and the terms it did use appear to us to be without support in the unchallenged facts appearing in the administrative record.

The result we reach here is very much in harmony with, and strongly supported by, the Fourth Circuit's decision in *Brooks,* note 1 *supra,* and the First Circuit's decision in Bates v. Commander, First Coast Guard District, 413 F.2d 475 (1969). Although the Government does not appear to make a similar contention here, in *Brooks* it was argued that release should be denied because the release application there was found to have been based in part "upon personal morals." The court rejected this argument because it was "satisfied that even if petitioner was motivated in part by a personal moral code, he is still entitled to the exemption because of the unquestioned finding that he was also substantially motivated by views derived from religious training and belief." It read *Seeger* as holding that a disqualifying personal belief or motivation is one constituting the sole basis for conscientious objection. *See also* Fleming v. United States, 344 F.2d 912, 915–916 (10th Cir. 1965). Thus, even if appellant's *religious* aversion to military service was reinforced by a personal distaste for it, the genuineness of the first would appear to require its recognition.

We are not here concerned with the controversy over whether conscientious objection must have a base in traditional religion.[8] Appellant has not relied upon a personal conviction unrelated to divine teachings of a similar character associated with organized religion. His showing was, rather, that his feelings proceed from his acceptance of the God of Judaism and his compulsion to act in accordance with what he conceives to be the will of that divinity. When the Government concedes that appellant's conscientious objection is sincerely held, we think this record points inescapably

8. This was the focus of *Seeger* under the language of Section 6(j) prior to its amendment in 1967. Cases like United States v. Sisson, 297 F.Supp. 902 (D. Mass.1969), and Welsh v. United States, 404 F.2d 1078 (9th Cir. 1968), cert. granted October 9, 1969, 396 U.S. 816, 90 S.Ct. 53, 24 L.Ed.2d 67, present a different problem, i. e., the constitutional valid-ity of Section 6(j) in the light of its failure to contemplate any basis for conscientious objection other than religious belief. In the appeal in *Sisson,* consideration of jurisdiction has been postponed until the hearing on the merits; and the two cases have been set for argument together. 396 U.S. 816, 90 S.Ct. 53, 24 L.Ed.2d 67.

towards the conclusion that that objection is grounded in appellant's religious faith and not in any purely personal code of conduct, or any political or sociological tenet.

Appellant was entitled to the issuance of the writ, and we reverse and remand for further proceedings consistent herewith. In this regard we direct the attention of the District Court to the manner of proceeding suggested by the Fourth Circuit in its disposition of Brooks v. Clifford, note 1 *supra*.[9]

It is so ordered.

9. "From what we have said, we conclude that petitioner is entitled to release, in accordance with his undertaking that he perform post-military work of the nature encompassed by the civilian work program administered by Selective Service. If, in fact, the Army refuses petitioner his honorable discharge in accordance with A.R. 635–20 the writ should issue forthwith. We do not presume, however, that such refusal will be forthcoming, since we have expressed our view that petitioner is entitled to an honorable discharge. In reversing the district court and remanding the case for issuance of the writ, we, therefore, authorize the district judge to stay its effective date a reasonable period to enable petitioner to be honorably discharged in accordance with the regulation. * * *" 409 F.2d pp. 708–709.