Richard M. KEPPLE, Petitioner,

v.

Melvin R. LAIRD et al., Respondents.

No. 14–70.

United States District Court,
District of Columbia.

April 1, 1970.

---

Jeremiah S. Gutman, Levy, Gutman & Goldberg, New York City, and Eric M. Blumberg, Washington, D. C., for petitioner.

Attorneys for petitioner gratefully acknowledge the assistance of Mr. Edwin J. Oppenheimer, Jr., law clerk of the New York Civil Liberties Union and Mr. Eugene Harley, law student at Fordham University and clerk at Levy, Gutman and Goldberg.

Thomas A. Flannery, U. S. Atty., Harold H. Titus, Jr., Principal Asst. U. S.

Atty., Oscar Altshuler, John T. Kotelly, Asst. U. S. Attys., Department of Justice, Washington, D. C., for respondents.

## MEMORANDUM OPINION

WADDY, District Judge.

This case comes before the Court on a return to a rule to show cause which was issued upon a petition for a Writ of Habeas Corpus. In the main the facts are not in dispute. Petitioner, Richard Kepple, enlisted in the United States Army on April 18, 1968. He completed basic training and advanced individual training at Fort Gordon, Georgia. In December of 1968 he was ordered to report to the Overseas Replacement Station at Fort Dix, New Jersey, and was assigned to the Overseas Replacement Command for further shipment to the Republic of Viet Nam. On January 15, 1969 he submitted his application for discharge from the Army as a conscientious objector. In accordance with the applicable Army Regulations he was interviewed by a psychiatrist, a chaplain and other military officers. The psychiatrist found that Kepple was mentally sound. The Chaplain's report of the interview was as follows:

"1. Pvt. E2 Richard M. Kepple RA 11832123 has come to me for counselling regarding his conscientious objection.

"2. We have counselled at some length and I feel that he is in good conscience. He is very idealistic and has a background of thinking intelligently and thoroughly.

"3. Recommend that Pvt. Kepple's request be given consideration."

On January 15, 1969 Kepple's company commander recommended that the application be disapproved on the ground that Kepple's conscientious objection existed prior to induction, but that Kepple had failed to assert its existence prior to induction, and had, *ipso facto*, waived the right to assert the claim subsequent to induction. Each of the officers in Kepple's chain of command recommended disapproval for the aforementioned reason. On May 12, 1969 the Army Review Board disapproved the application on the ground that the "Application evidences no change in religious beliefs since entry into military service and is based on a personal moral code." On October 6, 1969, Kepple was transferred to the Overseas Replacement Station at Fort Dix, New Jersey, for further assignment to the Republic of Viet Nam. Thereafter, on November 12, 1969, Kepple submitted a second application for discharge. The second application was disapproved summarily on the ground that it was substantially the same as the initial application. On December 11, 1969, Kepple requested permission to submit a third application but this request was denied. On the same date Kepple received orders to ship to Viet Nam. However, Kepple refused to follow said orders and was placed in the stockade. On December 12, 1969 Kepple was released from the stockade and placed aboard an airplane which transported him to Viet Nam where he presently serves in the Army. The instant action was commenced on February 2, 1970. The order to show cause was issued on the same date.

The scope of review in the instant action is limited to a determination of whether the Army had a "basis in fact" to support its refusal to discharge Kepple. United States v. Seeger, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); United States ex rel. Sheldon v. O'Malley, 137 U.S.App.D.C. 141, 420 F.2d 1344 (Dec. 19, 1969). In making this determination it is necessary to examine the facts which the Army had before it when it denied Kepple's application. In Kepple's initial application he stated:

"There comes a time in one's life when he must make a decision that will influence his entire life. I have been called to make this decision and it is not one that I make hastily. I have

practiced my religion and I have been an active member of the Roman Catholic Church for 21 years.

"One of the main teachings of Jesus Christ was that every person is a potential temple of the Holy Ghost. Christ said, 'Know Ye not that you are all temples of the Holy Ghost.' Because I am a Catholic, I believe this firmly and I obey it. Since the beginning of my Catholic School Training one of the things that was drummed into me since grammar school was the fact that every person God made was made in his image and likeness. Could I kill anyone that God has made? I have asked myself this question and found the answer to be an emphatic 'No'. I am against any violence or use of a weapon to kill anyone."

\* \* \* \* \* \*

"By having to kill a man, I would be placing a judgment on his right to live. In fact I would be condemning this man to death. It is God's right to judge. It is not mine."

The application is replete with statements which are in no way denied and which evidence Kepple's deep religious belief as a "progressive liberal Roman Catholic" and his total opposition to war and killing which grew out of that religious conviction.

Kepple's second application casts light on the genesis and maturation of his conscientious objection. In said application he stated that:

"1. I did not feel my convictions were strong enough to actually file before I got in the service.

"2. I was not mature enough to file and I was ignorant of proper procedure.

"3. My beliefs have become stronger since being in the Army and I have taken part in Demonstrations to stand-up for my beliefs."

\* \* \* \* \* \*

"Now that I have been in the service of the Armed Forces of my country, I find that I have learned that I can no longer take part in an Army whose primary purpose is to 'Kill'. *My convictions before coming into the Army were different from and not as strong as they are now.* I did not realize that I was going to be part of a war machine \* \* \* I have found a huge burden of guilt on me for I find myself part of a killing machine and just being part makes me sinful and is against my conscience. *I learned this only after joining and it only became clear to me recently when my first Conscientious Objector Application was turned down.* Now, I know that I really have no business working for the Army. I realize now how much I object to killing or to give it another name—'murder!'" [All italics supplied.]

The Army Review Board denied Kepple's application on the basis of Paragraph 3b(1) and (3) of AR 635-20, which provides in relevant parts as follows:

"3. Policy. a. *Consideration will be given to requests for separation based on bona fide conscientious objection to participation in war, in any form, when such objection develops subsequent to entry into the active military service.*

"b. Federal courts have held that a claim to exemption from military service under Selective Service laws must be interposed prior to notice of induction, and failure to make timely claim for exemption constitutes a waiver of the right to claim. *However, claims based on conscientious objection growing out of experiences prior to entering military service, but which did not become fixed until entry into the service, will be considered.* Requests for discharge after entering military service will not be accepted when—

"(1) Based *solely* on conscientious objection which existed, but which was not claimed prior to induction, enlistment, or entry on active duty or active duty for training."

\* \* \* \* \* \*

"(3) Based on essentially political, sociological, or philosophical views, or on a merely personal moral code."

\*   \*   \*   \*   \*   \*

"c. All requests for discharge based on conscientious objections will be considered on an individual basis in accordance with the facts and special circumstances in a particular case.

"d. Final determination on all requests for discharge based on conscientious objection (to include those listed in b above) will be made at Headquarters, Department of the Army." [All italics supplied.]

The respondents contend that petitioner's application for discharge was properly denied by the Army authorities because said application fell squarely within Paragraph 3b(1) and (3) of the cited regulation, in that: (1) his conscientious objection had existed prior to his induction and that his failure to claim it at that time had resulted in a waiver; and (2) his objection was based on a personal moral code. On the other hand, petitioner contends that his convictions concerning war were not strong enough for him to claim conscientious objector status prior to entering the service and that his conscientious objection developed subsequent to his enlistment and after exposure to the "war machine," and that therefore Paragraph 3b(1) is not applicable to him. He further contends that his conscientious objection is based on his religious conviction as an active Catholic, and that therefore Paragraph 3b(3) is not applicable to him.

Kepple was not a military draftee. Rather, he enlisted voluntarily. This fact would seem to indicate his conscientious objection did not exist prior to enlistment. There is no showing that Kepple was under any compulsion to enlist in the Army and no evidence to overcome his claim that his convictions as to conscientious objection had not matured at that time. Indeed, at oral argument, the respondents conceded the fact that petitioner's conscientious objection had not matured to the extent that a claim for exemption thereon would have been granted prior to induction. This concession conflicts with the asserted reason for the denial of petitioner's subsequent application for discharge as a conscientious objector.

This Court has been unable to find in the record before it any evidence to support the finding of the military that petitioner's conscientious objection was based on a personal moral code. On the contrary, the undisputed evidence is that petitioner's beliefs are based upon twenty-one years as an active member of the Catholic Church and the views of the younger clergy of that church, Bishop Fulton J. Sheen, Jr. and the "liberal" Catholics.

Accordingly, this Court finds that there is no basis in fact for the denial of petitioner's application for discharge under AR 635–20 as a conscientious objector and for that reason the decision is arbitrary and capricious.[1]

The Court concludes, therefore, that petitioner should be released in accordance with AR 635–20. The issuance of the writ will be stayed a reasonable time to allow the Army to properly discharge the petitioner.

---

1. Throughtout, this Court has spoken in terms of "application". This Court realizes, however, that there was more than one application. Nevertheless, this fact does not alter the Court's conclusion. The Army either erred when it denied the initial application, or it erred when it denied the second application, because it is clear from the second application that petitioner's opposition to war matured *subsequent* to his induction.