**In the Matter of Thomas W. MOORE**

**v.**

**George W. CONNELL, Commanding Officer of Edgewood Arsenal, General Edward M. Graham, Commanding General of Munitions Command, General Ferdnand J. Chesarek, Material Command General United States Army Material Command, Stanley Resor, Secretary of the Army,**

**and**

**Melvin Laird, Secretary of Defense.**

**Civ. No. 70–967–N.**

United States District Court,
D. Maryland.

Oct. 6, 1970.

William H. Zinman, Baltimore, Md., for petitioner.

George Beall, U. S. Atty., and Paul R. Kramer, Deputy U. S. Atty., for respondents.

## MEMORANDUM AND ORDER

NORTHROP, Chief Judge.

Thomas W. Moore, a Second Lieutenant in the United States Army, currently stationed at the Edgewood Arsenal, Maryland, has petitioned this court for

the issuance of a writ of habeas corpus. The purpose of this petition is to effect petitioner's discharge from the United States Army as a conscientious objector. The Army has disapproved his application for discharge.

The procedures for obtaining separation from military service based on a claim of conscientious objection are set forth in Department of Defense Directive 1300.6 [1] and Army Regulation 635–20. These provide that a member of the armed forces who opposes war may apply for and is entitled to a discharge as a conscientious objector. AR 635–20 establishes the following procedure: the applicant is interviewed by a psychiatrist, a chaplain, and an officer in the grade of 0–3 (Captain) or higher, who is knowledgeable in policies and procedures relating to conscientious objection matters. The latter is required to make a recommendation, together with his reasons, concerning the application for discharge. Thereafter, the application is forwarded for action by the Army. In accordance with the regulations, Lieutenant Moore was interviewed by an Army psychiatrist, Major Barton L. Kraff, who reported as follows:

> In my opinion, the patient was and is mentally responsible, able to distinguish right from wrong and to adhere to the right, and has the mental capacity to understand and participate in board proceedings. The patient has no mental disease or defect sufficient to

warrant disposition through medical channels.

LTC James F. Dolan, Post Chaplain, had the following to say after the prescribed interview with Lieutenant Moore: "He is apparently sincere in his belief. I consider that his conviction is religious in basis and origin." Again in accordance with AR 635–20, petitioner was interviewed by LTC William J. Henderson.

1. Recommend approval of LT Thomas W. Moore's request to be discharged from the Army by reason of conscientious objection.

\* \* \* \* \* \*

3. I believe that LT Moore's conscientious objection is based on religious belief. He is apparently sincere in this belief. I think that his belief and code of living are still in an advanced formative stage in his mind.

4. I had difficulty determining whether LT Moore's conscientious objection was based upon a personal moral code in which his responsibility was to himself or whether it was based upon a religious code in which his responsibility was to God.

5. I found that LT Moore has made several major personal decisions that were based, in my opinion, on immature judgment or rationalization. This immature judgment evidenced itself in his decision to apply for a direct commission as a chemical officer. He had hoped that as an officer

1. On May 10, 1968, pursuant to the general power of the Secretary of Defense as the chief executive officer of the Department of Defense under 10 U.S.C. § 133, that Department promulgated D.O.D. Directive 1300.6 "Conscientious Objectors." The Directive was amended on December 20, 1968.

In that Directive, it is stated: "The fact of conscientious objection does not exempt men from the draft," but Congress has "deemed it more essential to respect a man's religious beliefs than to force him to serve in the Armed Forces and accordingly has provided that a person having bona fide religious objection to participation in war in any form

\* \* \* shall not be inducted into the Armed Forces but will be required to serve his country for the same period of time in civilian work contributing to the maintenance of national health, safety, or interest under a civilian work program administered by Selective Service." Further, the Directive states that "Consistent with this national policy, bona fide conscientious objection [as set forth in the Directive] by persons who are members of the Armed Forces will be recognized to the extent practicable and equitable. Objection to a particular war will not be recognized." See Reitemeyer v. McCrea, 302 F.Supp. 1210, 1211, n. 1 (D. Md.1969) (Kaufman, J.).

he would have a better opportunity to resolve his conflict of conscience and that his duties would be similar to those that he had anticipated as an enlisted man. He did not consider that he would no longer be a follower, but would have to be a leader and instructor of men in areas which would include warfare in general and chemical warfare in particular.

\* \* \* \* \* \*

7. With reference to LT Moore's experience while stationed at a hospital in Germany, he states that he daily saw suffering and death. However, the examples he cited were the results of accidents, illness and a self-inflicted wound and not the results of violence. I think he is repulsed by any suffering and death, no matter what the cause.

8. In spite of the inconsistencies in LT Moore's attempting to document his belief and what I consider as evidence of immature judgment, the determining point is his goal to lead a nonviolent life patterned after the life of Jesus Christ and his apparent belief in this.

Petitioner's final interview was with CPT John D. Weidmann, who reported:

\* \* \* \* \* \*

2. The applicant offered nothing in his defense other than his application for discharge under AR 635-20. However, the applicant did answer certain questions willingly and freely concerning his religious and moral beliefs. He stated that if he were confronted with a "kill or be killed" situation, he would use violence only as a last resort, but would try to disarm the assailant and escape. Secondly, he stated that his religious beliefs and teaching preclude the use of violence or force in any manner.

3. Although the applicant appears to be honest and sincere in his intentions, I believe that this request not be favorably considered because the applicant had these beliefs prior to induction, but did not make them known at that time, and the applicant's be-

liefs are based on essentially political, sociological, or philosophical views, or on a merely personal moral code.

Petitioner contends that this report, and the interview which formed the basis for that report, was improperly considered by the Board. His argument is that he had already been interviewed by LTC Henderson and thus the interview by CPT Weidmann was not prescribed by the Army regulations. This court is of the opinion, however, that the interview by CPT Weidmann, while not necessary under the regulation, was properly considered by the Board. Had CPT Weidmann's report been favorable toward LT Moore, he undoubtedly would not have objected to its consideration by the Board. *Cf.* Reitemeyer v. McCrea, 302 F.Supp. 1210, 1217–1218 n. 5 (D.Md. 1969) (Kaufman, J.). In any event, because of the result reached by this court, it is unnecessary to reach a final determination of this claim.

The Adjutant General of the Army gave as the reason for disapproving the application of LT Moore: "Applicant's professed views became fixed prior to his entry into the active military service." The Conscientious Objector Review Board adopted the same reasoning.

 The federal courts are not—powered to second guess the Army as to its reasons for disapproving conscientious objection claims. *Cf.* Witmer v. United States, 348 U.S. 375, 380–381, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Packard v. Rollins, 422 F.2d 525, 527 (8th Cir. 1970); Cooper v. Barker, 291 F.Supp. 952 (D.Md.1968) (Harvey, J.). In cases of this sort, the scope of judicial review is the sharply limited one of determining whether there was a basis in fact for the finding that petitioner was not entitled to a discharge as a conscientious objector. United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4th Cir. 1969), reh. denied, 412 F.2d 1137 (1969); Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968); Cooper v. Barker, 291 F.Supp. 952 (D.Md.1968); Keil v. Seaman, 314 F.Supp. 816 (D.Md.1970) (Kaufman,

J.); Talford v. Seaman, 306 F.Supp. 941 (D.Md.1969); Donigan v. Laird, 308 F.Supp. 449 (D.Md.1969) (Northrop, J.). Because the court finds that there is no basis in fact for this finding, it quotes at length from the Board's opinion:

1. The Board finds that 2LT Moore's professed views were fixed prior to his entry into active military service. AR 635–20 precludes favorable action on applications based upon objection to war which existed prior to entry into military service but was not claimed. The Board relies on the following in support of its finding:

a. Moore was raised as a Roman Catholic. He stated that his parents raised him to live in accordance with the principles of Catholicism, and that "I have been taught to model my life after the life of Jesus Christ. In His nonviolent life, Christ has taught us the rewards of self-suffering and sacrifice." He also received 12 years of religious training in parochial schools. Thus, he stated: "While in college I continued developing my concept of religion and of what my conscience would permit me to do. *By the time I entered the Army, I had strong feelings against war and killing.* However, at that time I could not be called a conscientious objector. *After receiving my draft notice, I enlisted in the Army for the Chemical Lab School to minimize the possibility of being placed in a position where I would be required to kill another person.*" (Emphasis added by Board).

b. MAJ Barton L. Kraff, the psychiatrist who examined Moore, stated: "Patient has felt that his values, and beliefs have always conflicted with the US Army, but they have been strengthened as of the last 6 months." CPT John D. Weidmann, the hearing officer, stated: "Although the applicant appears to be honest and sincere in his intentions, I believe that this request not be favorably considered because the applicant had these beliefs prior to induction, * * *"

COL William M. Home, commanding officer of Edgewood Arsenal, also found that Moore's beliefs existed prior to entry into the service.

c. Thus, Moore's statement to the psychiatrist that he has always held beliefs that conflicted with the Army is consistent with the emphasized portions of his statement quoted above. So is his attempt to be placed in a position where he would not have to be concerned with killing. However, his assertion that his beliefs became fixed after his entry into military service does not ring true, for, as the psychiatrist noted, Moore stated that his beliefs *deepened* with the progression of his military service. This fact is undoubtedly so, but if his beliefs were crystalized prior to his entry into military service, the fact that his beliefs have become even more strongly held is irrelevant. Failure to claim conscientious objection existing prior to entry into military service at the appropriate time i. e. prior to entry into that service, constitutes a waiver of the claim.

In his request for discharge, petitioner stated the following about his religious training and belief:

I consider myself a Christian, specifically a Catholic. I believe in the existence of a Supreme Being and this God has given Jesus Christ as a model upon which to base our lives.

Christ's entire life is an example of nonviolence. I believe it is wrong to kill. I have been taught about and believe in the sacredness of life. I will not place myself in such a position as to end the life of another. Nor can I aid or consent to aid any individual or organization which takes the life of another human being. Since wars are fought at the expense of human lives, I will not aid those who wage war.

While in college I continued developing my concept of religion and of what my conscience would permit me to do. By the time I entered the Army,

I had strong feelings against war and killing. However, at that time I could not be called a conscientious objector.

After receiving my draft notice, I enlisted in the Army for the Chemical Lab School to minimize the possibility of being placed in a position where I would be required to kill another person. Since entering the Armed Forces, I have been exposed to the principles of war and the methods of killing people. Such things as weapon and bayonet training helped create much conflict within myself. I couldn't in good conscience imagine myself using what I had been taught to kill another person.

Upon completion of Basic and Advanced Training, I applied for a Direct Appointment with the hope that as an officer I would have a better opportunity to resolve my conflict. I had hoped that as a Chemical Officer my duties would be similar to those I had anticipated as an enlisted man. After seven months my appointment was approved. During the seven month wait, my feelings against war and killing deepened. I was stationed at a hospital and daily saw suffering and death. I was repulsed to think of the suffering and death caused by war.

With Officer Basic Training I was re-exposed to the doctrines of war and the methods of killing. The difference now was that I was expected to lead others in actions contrary to my religious training and beliefs. Equally appalling were the doctrines and techniques of chemical warfare which I was expected to embrace. I was then assigned to Edgewood Arsenal where my strong feelings against war have developed to the point which requires me to make a stand.

I was recently married and this has influenced me also. My feelings of the preciousness of life and the unchristian principles of war have become even more fixed in my conscience.

I am currently on orders to Korea. Had I known of the possibility of a discharge on the basis of conscientious objection, I would have applied before I received orders for Korea. I cannot compromise my beliefs with my duties in the Army. I find the only way to fulfill my obligation to my conscience is to apply for a discharge by reason of conscientious objection.

I try with all sincerity to live every day according to the principles of Christianity. Since entering the Army and being exposed to the methods of military force, I have often spent hours trying to visualize my position. With the help of this frequent introspection, I have been able to deeper develop my conscience.

AR 635–20(3) provides:

a. Consideration will be given to requests for separation based on bona fide conscientious objection to participation in war, in any form, when such objection develops subsequent to entry into the active military service.

b. Federal courts have held that a claim to exemption from military service under Selective Service laws must be interposed prior to notice of induction, and failure to make timely claim for exemption constitutes waiver of the right to claim. However, claims based on conscientious objection growing out of experiences prior to entering military service, but which did not become fixed until entry into the service, will be considered. Requests for discharge after entering military service will not be accepted when—

(1) Based solely on conscientious objection which existed, but which was not claimed prior to induction, enlistment, or entry on active duty or active duty for training.

(2) Based solely on conscientious objection claimed and denied by the Selective Service System prior to induction.

(3) Based on essentially political, sociological, or philosophical views, or on a merely personal moral code.

(4) Based on objection to a particular war.

c. All requests for discharge based on conscientious objections will be considered on an individual basis in accordance with the facts and special circumstances in a particular case.

d. Final determination on all requests for discharge based on conscientious objection (to include those listed in b above) will be made at Headquarters, Department of the Army.

The opinion of the Board was to the effect that petitioner waived the right to claim conscientious objection because his *beliefs* were crystallized prior to his entry into the Army. This Court finds, however, that this conclusion was without any basis in fact. The very purpose of the administrative procedures adopted by the Defense Department and Army were to permit the assertion of a claim of conscientious objection when that *objection* was not formulated until after military service had begun. *Cf.* United States ex rel. Brooks v. Clifford, *supra.* See also Goodwin v. Laird, 317 F.Supp. 863 (N.D.Calif. June 19, 1970); McGehee v. McKaney, 312 F.Supp. 1372 (D. Md.1970) (Kaufman, J.); United States ex rel. Confield v. Tillson, 312 F.Supp. 831 (S.D.Ga.1970); Talford v. Seaman, 306 F.Supp. 941, 945 (D.Md.1969) (Kaufman, J.). A case which is factually similar is Rautenstrauch v. Secretary of Defense, 313 F.Supp. 170 (W.D.Texas 1970). Petitioner there was a reservist seeking habeas corpus relief under AR 135–25, which is for all practical purposes identical to AR 635–20, involved herein. The Army denied Rautenstrauch's application for discharge for the reason that his views had become fixed prior to his entry into active military service. The district court, in granting Rautenstrauch release from custody, stated:

Religious training and beliefs provide the basis for one's objections to war in any form. It is the objection which must become fixed and manifest itself subsequent to entry into the Armed Forces, not the religious beliefs which underlie that objection. AR 135–25 § 5(b). In construing AR 635–20, which is identical in import to AR 135–25 § 5(b), the Court of Appeals in *Healy* [424 F.2d 299 (5th Cir. 1970)], after quoting from AR 635–20 § 3(a), said:

"This does not mean that the religious belief upon which the objection is based must manifest itself only subsequent to entry on active duty but rather, the objection itself must so manifest itself and not exist prior to entry on active duty. This conclusion is aptly illustrated in the sub-paragraph following the above quoted language where it is stated:

" '[C]laims based on conscientious objection growing out of experiences prior to entering military service, but which did not become fixed until entry into the service will be considered. AR 635–20 Sec. 3(b).' "

While it is true that petitioner's religious belief may have manifested itself prior to applying for OCS, there is no basis in fact for a finding that his objection to war, in any form, had become fixed prior thereto. (*See also* Kepple v. Laird, 319 F.Supp. 1342 (D. D.C. Apr. 1, 1970)).

The Board relied on certain statements by Lieutenant Moore to reach its conclusion that his beliefs existed prior to his entry into the Army. However, in doing so, it did not give weight to the rest of his statements. When read in their entirety, it is clear to this court that petitioner's conscientious *objection* to war, while existing in a dormant state prior to his entry into military service, did not become crystallized until after entry into the service. As one district

judge has expressed the concept of crystallization:

> \* \* \* a man can intellectually generalize about theories but often must go through actual experiences before feeling the emotional compulsion that causes him through his conscience to act according to his beliefs.
>
> \* \* \* \* \* \*
>
> "Crystallization" reflects a very subtle psychological process. For some persons just reading and discussing is enough to cause them to make the mental and emotional commitment to oppose participation in war. Other persons, like petitioner, need to go through the actual experience of combat training, the experience of learning to handle and to use weapons of destruction before their beliefs crystallize into commitment. (Goodwin v. Laird, 317 F.Supp. 863 (N.D.Calif. June 19, 1970)).

All of the interviewing officers found that petitioner's views were sincerely held. *Cf.* United States ex rel. Tobias v. Laird, 413 F.2d 936 (4th Cir. 1969). Only Captain Weidmann questioned the religious content of Lieutenant Moore's beliefs. He stated that petitioner's "beliefs are based on essentially political, sociological, or philosophical views, or on a merely personal moral code." There were no facts stated to support this conclusion, and indeed there could be none in this court's opinion. Even under pre-*Seeger* standards, this court is convinced that Lieutenant Moore's beliefs are religious in nature as that term is used in 50 U.S.C. App. § 456(j). Furthermore,

it is clear that petitioner's views are religious as that term has been defined in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), and Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970). *See also* United States v. Broyles, 423 F.2d 1299 (4th Cir. 1970); United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4th Cir. 1969), reh. denied, 412 F.2d 1157 (1969). Thus petitioner has met the standards for discharge prescribed by D.O.D. 1300.6 and AR 635–20. He is therefore entitled to discharge as a conscientious objector.

An in-service applicant for discharge as a conscientious objector who has served less than 180 days in the military is asked to state in his application for discharge whether he is willing to engage voluntarily in work of a civilian nature in accordance with 50 U.S.C. § 456(j).[2] Lieutenant Moore stated in his application that he is willing to perform such civilian work.[3] There is authority for the position that a petitioner in Lieutenant Moore's posture can be granted conditional relief, *i.e.*, conditioned on his performing work of a civilian nature for the remaining period of his duty obligation. *See, e. g.*, Packard v. Rollins, 307 F.Supp. 1388 (W.D.Mo.1969), aff'd, 422 F.2d 525 (8th Cir. 1970). This court will adopt an order similar to that passed in *Packard*.

Accordingly, it is this 6th day of October, 1970, ORDERED:

1. That the petition for writ of habeas corpus be and the same is hereby,

2. AR 635–20(4)(a)(1)(*l*) provides:
 (*l*) When the applicant has served less than 180 days in the military service, a statement as to willingness to perform work under the Selective Service civilian work program for conscientious objectors. Also a statement of the applicant as to whether he consents to the issuance of an order for such work by the local Selective Service Board.

3. The application for discharge, contained in the official record of this case, includes a section (*l*) which inquires into the applicant's willingness to perform

work under the Selective Service civilian work program. Lieutenant Moore stated in reply thereto that he was willing to perform such work. However, AR 635–20 provides that this question is to be directed to those who have served less than 180 days, so technically this question was not directed to Lieutenant Moore. *But see* United States ex rel. Brooks v. Clifford, 409 F.2d 700, 702–703 (4th Cir. 1969), where Judge Winter indicates that an applicant who has served *more* than 180 days is asked to make such an indication.

granted, conditioned on the provision that petitioner, in accordance with his expressed desires, serve in the civilian work program administered by the Selective Service system for a period of time equal to that of his remaining active duty obligation;

2. That the effective date of the writ be stayed for two weeks from this date, to allow respondent time to discharge petitioner under the appropriate regulations. If respondent does not choose to do so, the writ will issue forthwith.

3. The Clerk is directed to mail copies of this Memorandum and Order to petitioner, to William H. Zinman, Esq., and to George Beall, Esq., United States Attorney for the District of Maryland.