**Application of PFC. Michael Woodrow KERN, Petitioner,**

v.

**Honorable Melvin LAIRD, Secretary of Defense, et al., Respondents.**

**Civ. A. No. C–3382.**

United States District Court, D. Colorado.

Nov. 23, 1971.

Rudolph Schware, Denver, Colo., for petitioner.

James L. Treece, U. S. Atty., Denver, Colo., for respondents.

## MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

The petitioner is a member of the Army Reserves who was denied a discharge as a conscientious objector by the Army's Conscientious Objector Review Board (Review Board). He is now seeking a writ of habeas corpus from this court, claiming that there was no basis in fact for denying his application for discharge. The government has opposed issuance of the writ, claiming that this court has no jurisdiction to hear the petition, that Kern does not have standing to main-tain this action, and that the decision to deny the application was supported by a basis in fact.

▆▆▆ The claims of the government that jurisdiction and standing are absent were not elaborated either by argument or brief, and we must guess at their meeting. However, we can find no argument which would support the claims, and thus the writ cannot be denied on either basis. The only jurisdictional argument which we can deduce is that status as a member of the reserves is not sufficient to constitute being "in custody" as required by 28 U.S.C. § 2241. The evolving concept of custody has been dealt with at great length elsewhere, *e. g.,* Donigian v. Laird, 308 F.Supp. 449, 451 (D.Md. 1969), and need not be detailed here. It is well established that a person in the military can bring an action seeking a writ of habeas corpus, *e. g.,* Scaggs v. Larsen, 396 U.S. 1206, 90 S.Ct. 5, 24 L. Ed.2d 28 (1969) (Douglas, J., as Circuit Judge), and there is little doubt that a member of the reserves is also "in custody." Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968); United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371 (2d Cir. 1968), cert. denied, 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969); Nason v. Secretary of Army, 304 F.Supp. 422 (D.Mass.1969); Barr v. Weise, 293 F.Supp. 7 (S.D.N.Y. 1968). Most courts hearing petitions from reservists have faced situations where the petitioner had been or was about to be ordered to report to active duty. *E. g.,* Hammond v. Lenfest, *supra.* That situation is not present here, but to base our determination of jurisdiction on the fortuity of orders being issued would exalt form over substance. A member of the reserves is faced with a very real restriction on his liberty, even though that restriction is limited compared to the position of an active duty soldier. Nason v. Secretary of Army, *supra.* Moreover, the petitioner here claims that his conscientious objector beliefs developed after joining the reserves, and that the reserve training and meetings force him

to make an increasingly unacceptable compromise of those beliefs. For him, his duties as a reservist appear to be a totally repugnant form of military service, which places a genuine restriction on the liberty of his conscience as well as that of his person. Consequently, to deny jurisdiction because Kern is not on active duty would be to completely ignore the realities of the situation he claims to exist. Similarly, any argument that assignment to active duty would be necessary to confer standing must fail. Kern is presently obliged to follow orders and to attend meetings, and his conscience is shackled as thoroughly as it would be on active duty. Since he has standing on the basis of his participation in reserve activities, and since we can think of no other arguments against finding either jurisdiction or standing present, we must turn to the merits.

As required by the applicable army regulations, Kern submitted a request for a conscientious objector discharge to his commanding officer, containing the requisite personal information, a statement of his convictions and beliefs, and a discussion of how those beliefs developed. He was raised in a Roman Catholic home, and as a youth took his religion fairly seriously. After leaving home he fell away from the church as a formal institution. At the time he registered for the draft as well as when he enlisted in the reserves he felt that every male citizen had an obligation to serve in the military in some capacity. After enlistment, Kern developed a renewed interest in religion, and though he still feels no need for organized religion he professes a belief in a "Supreme Being" which abhors war. He was influenced in his development by news reports of the events in Vietnam and Biafra, but claims a repulsion to war in all forms.

After these beliefs had matured Kern realized that even his rather limited role in the military was a compromise of his convictions. He attempted to join the Peace Corps, but he was refused because of his military obligation, and he then sought a medical discharge which was denied. After these unsuccessful attempts he "found out" that he "still had the right to apply for conscientious objector status." Kern has stated that he will go to prison rather than continue in the military, but is trying to obtain a discharge because he "would like to do social work which would mean working for the government."

After the application for discharge, with the statements referred to above, had been submitted, Kern was interviewed by Major Yost, the hearing officer required by the regulations, by Lt. Erfurdt, his commanding officer, by Major Douglas and Major Greenburg, army chaplains, and by Dr. Rewey, a psychiatrist. Both chaplains found Kern to be sincere in his beliefs and to harbor an objection to military service "based upon participation in war in any form." Major Douglas observed that the objection was not based on "association with any formal religious organization" but upon "his belief that there is a God" who would disapprove of military service. Major Greenburg, in a long report, concluded that there was no basis for finding that Kern "had developed these beliefs as expedients for temporary, personal gains against any system, or to evade any further military obligations." Similarly, Dr. Rewey, the psychiatrist, found Kern to be sincere, and concurred with both chaplains in recommending discharge of the petitioner.

Major Yost and Lt. Erfurdt also interviewed Kern, and both recommended that the application for discharge be denied but that Kern be assigned to non-combat duty. Lt. Erfurdt found that Kern's "attitudes and answers indicated a sincerity toward his claim as a conscientious objector," but Erfurdt also stated that he felt sincerity could not be judged accurately in an interview. He found that Kern's beliefs "stem from his individual religious convictions" but are also "partially politically founded." Erfurdt concluded that he "suspect[s] that [Kern] is using a conscientious objector application as another means of obtaining an easier way out of his military ob-

ligation." This suspicion was triggered by the fact that Kern explained his original enlistment in the reserves as an attempt to "dodge the draft." Major Yost never specifically stated whether he considered Kern sincere or not. Rather, his recommendation of disapproval seems to have been based solely on the fact that "PFC Kern has not had a history of religious upbringing which opposed war or violence." A finding of sincerity can be inferred, quite persuasively, from the fact that Yost recommended non-combat status for Kern because of his "strong personal beliefs against the actions often required of a combat organization."

This, then, is the record which went to the Review Board, along with two personal letters attesting to Kern's sincerity and perfunctory recommendations of disapproval by officers in the chain of command. The Review Board found that Kern's "alleged conscientious objector beliefs are not sincerely held," are not "grounded in religious training and belief," and were "based on consideration of policy, pragmatism, expediency, and objection to a particular war." There are in essence three grounds claimed by the Board as justifying their decision: the first is objection to a particular war, the second is insincerity, and the third is the absence of a basis in "religious training and belief." In support of its findings the Board referred to numerous items from the record, and because there are several grounds claimed for denial they must be examined separately.

■ As support for the conclusion that Kern was opposed only to the Vietnam war the Review Board cited his participation in three demonstrations against that war, the statements in his application of repulsion by the Vietnam conflict, and part of a letter from a Mr. Sarber stating that Kern "has always been quite outspoken in opposition to the war in Vietnam." None of these constitutes a basis in fact for finding that Kern was not opposed to all war. The Board referred to Sarber's letter as support for their conclusion, but conveniently neglected to quote the next

sentence in that same letter: "In recent months I have noted that his stated position has been enlarged to a general condemnation of war as a means of settling differences between peoples and nations." It is apparent from the letter that Sarber felt Kern was sincerely opposed to all war. In fact, the only "evidence" which could support the Board's conclusion is Kern's participation in demonstrations against the war, but that clearly does not amount to a factual basis. There can be no question but what some opponents of the Vietnam war are motivated by political or social considerations and do not object to war in all forms. Nonetheless, in the absence of any evidence that a person is not opposed to other wars, it seems inappropriate to rely on opposition to the present conflict as a factual basis for concluding that a person opposes only that war. If Kern does in fact object to all war it would be somewhat inconsistent for him to fail to demonstrate against the Vietnam conflict, since at the moment that is the only war he is in any position to affect. Kern's demonstrating is consistent with opposition to all war, and at best is neutral as to this question. Consequently, there is no basis in fact in the record for classifying Kern as a selective conscientious objector.

■■ The second ground for denial was a finding that Kern is insincere in his beliefs. As one aspect of that conclusion the Board found the sequence of events leading up to the application for a conscientious objector discharge, particularly the attempts to join the Peace Corps and to obtain a medical discharge, cast doubt upon Kern's sincerity. They also found that he had made no "sacrifices" in support of his belief and had shown no "actions or behavior" which expressed his objections. There is nothing in the record to show that the attempt to join the Peace Corps was insincere or improperly motivated, and that attempt should be placed in the category of action consistent with and expressive of Kern's beliefs. At the very least, it cannot be used to cast doubt on Kern's

sincerity since there is nothing in the record to explain what Kern's motives were. The attempt to receive a medical discharge is even less acceptable evidence of insincerity, since Kern was granted a "#3 profile" excusing him from lifting and excessive manual labor. That determination shows that there was a legitimate reason for requesting a discharge, and it cannot now be held against the petitioner.

■ In his application for discharge Kern explained that his beliefs had crystallized only a relatively short time before he submitted the application, and therefore he noted that he had had little opportunity to demonstrate his convictions. He points to the attempt to join the Peace Corps, his participation in anti-war demonstrations, and conversations with fellow reservists and employees as the only behavior truly reflecting his beliefs. In the light of these items the Board's conclusion that there were no activities consistent with his beliefs is difficult to accept. Participation in anti-war activities reflects a sincere opposition to *at least* one war, and there is nothing to show that Kern did not sincerely oppose all wars. Whether or not the actions of Kern reflect his claimed convictions is perhaps open to debate, but even if they did not there is no basis for the Board's conclusion. There is no requirement of positive action and sacrifices, and their absence is not a fact to be relied upon, particularly when the petitioner has made out a prima facie case of eligibility for discharge.

■ Another source for the finding of insincerity was the Review Board's conclusion that the statement of beliefs made in Kern's application was "vague and insufficiently strong" for them to accept it as true. They also pointed to the fact that Kern claimed to rely on no one person for religious guidance. These reasons clearly fail to constitute a "basis in fact" for questioning Kern's sincerity. There is nothing inherently suspect about an inability to articulate one's religious feelings in a manner capable of moving or converting a reader. Indeed,

if vagueness or insufficient strength of expression were deemed a basis in fact, a premium would be placed on glibness and the mastery of rhetoric. It is likely, though unfortunate, that the more articulate person already has a distinct advantage over his tongue-tied colleagues, with non-verbal evidence of sincerity being a secondary factor much more difficult to evaluate. To convert this latent intuitive response to a well-turned phrase into a basis in fact for denying an application for discharge would be to stray dangerously far from the proper inquiry of courts and review boards. Similarly, the absence of a named source of influence is not a proper ground for decision. A letter from Paul Tillich endorsing the religious views espoused by a petitioner might be very impressive, but it would have no inherent value in determining the sincerity of a person's beliefs.

■ The only other basis for a finding of insincerity is the report of Lt. Erfurdt, and that report is clearly insufficient to support the Board's decision. In the first place, the report specifically states that Erfurdt felt Kern was sincere. Of more importance, however, is the fact that the only basis for questioning Kern's sincerity which appears in the report is the statement of Kern that he enlisted "to dodge the draft." That was presumably a truthful answer, but it is totally irrelevant to the Review Board's proper inquiry. The decision to enlist occurred long before Kern's conscientious objector beliefs ripened, and his motives for enlisting have no bearing on his present sincerity. To permit the Board to rely on the earlier motives would be analogous to denying conscientious objector status to a person who did not apply for that classification before entering the military, and that type of reasoning has been thoroughly discredited. *See, e. g.,* Pitcher v. Laird, 421 F.2d 1272 (5th Cir. 1970); Ptak v. Laird, 335 F.Supp. 727 (D.Colo.1971). Since the statement of Kern is not a basis in fact for the Board's decision, the only reliance on Erfurdt's report would have to be based on his suspicions of

Kern's insincerity. We pointed out in Ptak v. Laird, *supra*, that a "decision as to sincerity cannot be made on the basis of conjecture and suspicion." If the unjustified suspicions of Erfurdt were to become a "basis in fact" for the Review Board's decision, the army review system would become a sham. The negative recommendation of any one person would automatically foreclose the granting of a conscientious objector discharge, a result clearly not contemplated by the regulations or the cases. We assume that the Board referred to Lt. Erfurdt's report in concluding that Kern's beliefs were grounded in "policy, pragmatism, [and] expediency," since there is absolutely nothing else in the record to even suggest that the Board could make that finding. Since the report does not present a basis in fact for the Board's decision, and since there is no other basis for a finding of insincerity, that ground for the Board's denial of the application is not sufficient.

The only remaining ground for denial of Kern's application is the Board's conclusion that his beliefs were not based on "religious training and belief." We find that there is no basis in fact for denial of the application for discharge on this ground. The only item in the record which supports the Review Board's finding is the statement of Major Yost that Kern had no "history of religious upbringing which opposed war or violence." Assuming the truth of the underlying fact, that there was no such history for Kern, it would constitute a "fact" upon which a decision could be based, at least in part. However, Yost phrases his statement as though there were a legal requirement of such a history, and this is clearly a misstatement of the law. In Welsh v. United States, 398 U.S. 333, 339, 90 S.Ct. 1792, 1796, 26 L.Ed.2d 308 (1970), the Supreme Court reiterated the holding of United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965):

> The Court made it clear that these sincere and meaningful beliefs that prompt the registrant's objection to all wars need not be confined *in either source or content* to traditional or parochial concepts of religion. (emphasis added).

In the case before us, the beliefs of Kern clearly occupy a place in his life equivalent to that normally held by conventional religious beliefs, and thus he would seem to meet the tests of *Welsh* and *Seeger*. In fact, any other conclusion would be inconsistent with the purposes of granting conscientious objector discharges. A person's sincerity cannot be fairly tested by the length of his training any more than it can by the glibness of his tongue. *See* Ptak v. Laird, 335 F.Supp. 727 (D. Colo.1971) citing United States ex rel. Lohmeyer v. Laird, 318 F.Supp. 94, 102 (D.Md.1970) ("If the length or type of religious training, formal or informal, were the test, the conversion of Saul on the road to Damascus might be open to question.") The purpose of the religious standard in the conscientious objector area is not to limit the status to those who have been trained in a formal religion, but to limit it to those who object to war for essentially religious reasons. Kern has made out a prima facie case of his eligibility for a conscientious objector discharge, and there appears to have been no basis in fact for denial of that discharge by the Review Board. Consequently, the petitioner is entitled to the relief he seeks. If the defendant neither seeks an appeal nor grants petitioner Kern a discharge within the time allowed for an appeal from this decision, a writ of habeas corpus will issue.