Jeffrey M. **ARLEN**, M.D., Petitioner,

v.

Hon. Melvin **LAIRD**, Secretary of Defense, et al., Respondents.

No. 71 Civ. 538.

United States District Court, S. D. New York.

July 21, 1972.

Michael N. Pollet, New York City, for petitioner.

Whitney North Seymour, U. S. Atty., S. D. N. Y., by Joseph P. Marro, Sp. Asst. U. S. Atty., for respondents.

EDELSTEIN, Chief Judge.

### OPINION

This is a petition for a writ of habeas corpus brought by a First Lieutenant in the Medical Corps, United States Army Reserve. Petitioner, Jeffrey M. Arlen, attacks the Army's denial of his application for conscientious objector status. The sole issue is whether there was any "basis in fact" to support the Army's determination.

At a hearing before this court, both parties agreed that the petition for the writ of habeas corpus could be decided upon the basis of the present record.

This court has jurisdiction to hear and determine this habeas corpus application. Arlen v. Laird, 451 F.2d 684 (2d Cir. 1971); Strait v. Laird, U.S., 92 S. Ct. 1693, 32 L.Ed.2d 141 (U.S. May 22, 1972).

In June 1969, while an intern at the University of California Hospital, San Francisco, California, Arlen enlisted in the United States Army Reserve at the Headquarters, Sixth United States Army, Presidio of San Francisco, California. He was assigned to the Medical Corps with the rank of First Lieutenant. Since then he has been in the inactive reserves. He has not been attached to any unit. His service connected activities are directed by the Reserve Officer Components Personnel Center located at Fort Benjamin Harrison, Indiana, via his Commanding Officer, Sixth United States Army.

Arlen has resided within New York State since November 1969, and has been a resident of New York City since January 1970. He works at the St. Marks Free Clinic in New York City which he helped to establish in January 1970. Subsequently he applied for an exemption from active duty on the basis of community need for free medical services. This request was denied in July 1970. The Army, however, granted him a six-months hardship delay in reporting for active duty in order to afford an opportunity to secure the services of another physician or transfer his patient workload to other physicians in the area.

On July 7, 1970, he wrote to his Commanding Officer, Sixth United States Army, requesting appropriate forms to establish a conscientious objector claim. The requisite forms together with instructions were forwarded to him. On August 7, 1970, he duly filed an application for discharge with the Commanding Officer, Sixth United States Army by reason of his alleged conscientious objection. His application was forwarded by the Commanding Officer, Sixth United States Army to the Commanding Officer, Headquarters, First United States Army, Ft. Meade, Maryland, for processing inasmuch as Arlen's New York residence placed him within the jurisdiction of the First United States Army.

Thereafter, in full compliance with the applicable provisions of Department of Defense Directive (DOD) 1300.6 and Army Regulation 135–25 [1] Arlen was in-

---

1. D.O.D. 1300.6 sets forth detailed guidelines and procedures for consideration of requests from military personnel for discharges on the ground of conscientious objection. D.O.D. 1300.6 provides, in pertinent part:

"The fact of conscientious objection does not exempt men from the draft. However, the Congress * * * has deemed it more essential to respect a man's religious beliefs than to force him to serve in the Armed Forces and accordingly has provided that a person having bona fide religious objection to participation in war in any form shall not be inducted into the Armed Forces but will be required to serve his country for the same period of time in civilian work contributing to the maintenance of national health, safety, or interest under a civilian work program administered by Selective Service.

"Consistent with this national policy, bona fide conscientious objection as set forth in this Directive by persons who are members of the Armed Forces will be recognized to the extent practicable and equitable. * * *

"No vested right exists for any person to be discharged from military service at his own request even for conscientious objection before the expiration of his term of service, whether he is serving voluntarily or involuntarily. Administrative discharge prior to the completion of an obligated term of service is discretionary with the military service concerned, based on judgment of the facts and circumstances in the case. * * *

"Since it is in the national interest to judge all claims of conscientious objection by the same standards, whether made before or after entering military service, Selective Service System standards used in determining [conscientious objector] classification of draft registrants prior to induction shall apply to servicemen who claim conscientious objection after entering military service. * * *

"Determination by the Military Department, in accordance with the facts

terviewed on October 1, 1970, by an Army chaplain, on October 15, 1970, by an Army psychiatrist,[2] and on November 5, 1970, by an Army hearing officer in the grade of O.3 or higher "who is knowledgeable in policies and procedures relating to conscientious objector matters." All three officers found Arlen to be a sincere conscientious objector. The hearing officer, Captain Walter F. Higgins, the only one permitted by regulation (A.R. 135–25, par. 7(b)(3), text cited note 1 *supra*) to submit a written recommendation and the reasons there-

for to the appropriate commander, determined that the conscientious objector application be given favorable consideration and approval.[3] Therefore, pursuant to procedural regulation (see Army Regulation 135–25, para. 7(c)) he forwarded Arlen's application for discharge, together with the supporting interview reports of the chaplain and the psychiatrist and his reasoned recommendation to the Commanding Officer, Sixth United States Army, for his recommendation. He,[4] in turn, after recommending

of the case and the guidelines furnished herein, shall be final with respect to the administrative separation of its members. * * * "

Army Regulation 135–25, par. 7(b) provides:

"The commander will arrange for the applicant to be interviewed. Expenditure of funds or the use of Government transportation for applicants in connection with these actions is not authorized.

"(1) Applicant will be interviewed by a military chaplain, preferably of the applicant's faith, who may be from any component of the Armed Forces. The chaplain will submit a report of interview to the commander to include comments on the sincerity of the applicant in his belief and an opinion as to the source of the applicant's belief. *A recommendation for approval or disapproval will not be included.*

"(2) Applicant will be interviewed by a military medical officer, preferably one trained in and practicing psychiatry, who may be from any component of the Armed Forces. The medical officer will submit a report of psychiatric evaluation to the commander indicating the presence or absence of any psychiatric disorder which would warrant treatment of the applicant or disposition of records through medical channels. *A recommendation for approval or disapproval will not be included.*

"(3) The applicant will be afforded an opportnity to appear in person (with counsel retained by him if he desires) before an officer, other than required in (1) and (2) above, in the grade of O–3 or higher, who is knowledgeable in policies and procedures relating to conscientious objector matters. The officer conducting the interview will permit the applicant to be heard in support of his application and he will make

such other inquiries into the merits of the application as he considers appropriate. The officer conducting the interview will submit in writing his recommendations, and reasons therefor, to the commander. If the applicant waives the opportunity to be heard, his waiver will be obtained in writing and made an inclosure to the application for discharge.

"(4) The commander will advise the interviewing officers of the requirements of (1), (2), and (3) above. In addition, officers conducting interviews as provided in (1) and (3) above will be furnished a copy of this regulation, application, and supporting papers."

2. The examining psychiatrist is required to do no more than determine that the applicant is free from psychiatric disorder. United States ex rel. Sheldon v. O'Malley, 137 U.S.App.D.C. 141, 420 F.2d 1344, 1346–1347 (1969). Lovallo v. Resor, 443 F.2d 1262 (2d Cir. 1971).

3. Captain Higgins specifically found that "he (Arlen) is sincere and dedicated beyond any question of doubt. . . ." Moreover, he concluded that "Lt. Arlen is conscientiously opposed to participation in war in any form and conscientiously opposed to participation in both combatant and non-combatant and non-combatant [sic] training and service in the Armed Forces."

4. Army Regulation 135–25, par. 7(c) (3) (g) sets forth the procedure for forwarding military personnel conscientious objector applications from the O–3 hearing officer to the next echelon of military review. H. L. Ligier, Chief, AG Res Forces Div, signed a document bearing the letterhead,

    Headquarters Sixth United States Army
    Presidio of San Francisco, California
    94129

approval of the application, forwarded all the papers for final determination to the Commanding Officer, United States Army Reserve Components Personnel Center, Ft. Benjamin Harrison, Indiana.[5] Yet, on February 3, 1971, the Conscientious Objector Review Board[6] denied Arlen's application for discharge as a conscientious objector upon the ground that Arlen's conscientious objector beliefs were not sincerely held and were not grounded in religious training and belief. After this determination the Convening Authority of the Conscientious Objector Review Board approved the denial of the claim. This proceeding was then instituted. Arlen's sole contention is that there is no basis in fact for the denial of his application.

Arlen's beliefs, their genesis and his current claim for conscientious objection are set forth in his application for discharge to the effect that he subscribes to a philosophy of human service. He claims that the basic tenet of his philosophy is a belief in a scheme of life designed to obviate suffering and to promote the virtues of selflessness, patience, love, dedication and service to humanity. The application specifically states that his "work [as a physician] was [sic] the reflection of me. . . ." The application explains how his beliefs affected his choice of vocation, mode of employment and style of life. Moreover it elucidates how and why his philosophy compels conscientious objection to all wars, and why service in the military would violate his beliefs.

After reviewing his record C.O.R.B. concluded "that the documentation submitted fails to qualify the applicant as a conscientious objector (classification I-

O)." In support of its conclusion it stated that "it was never shown that Arlen's claim was of a moral or religious nature; the timing of the application caused it to disbelieve his sincerity; throughout the application Arlen continually used the Vietnam War as a fulcrum on which his alleged pacifist views balanced; Arlen never made any sacrifices in support of his alleged beliefs; and it was shown that his stated views were not his own and were primarily pragmatic in nature."

■ It is not difficult to understand the C.O.R.B.'s negative reaction to Lt. Arlen's conscientious objection. The timing of his application might cause surmise that he has woven a fact fabric contrived to obtain his discharge. Moreover, this sequence of events provokes speculation as to the genuineness of his moral and religious beliefs, and makes his motives and sincerity suspect. In short, it can be said that his claim is not an appealing one. However, surmise, speculation, suspicion, Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953) and unsupported assumptions and inferences, Rosengart v. Laird, 449 F.2d 523 (2d Cir. 1971) rev'd. and remanded 405 U.S. 908, 92 S. Ct. 931, 30 L.Ed.2d 779 (U.S. May 2, 1972, per curiam), without more, do not rise to the basis in fact standard which is crucial to this case. It is well settled that the scope of review is circumscribed by the severely limited "basis in fact" standard. Hammond v. Lenfest, 398 F. 2d 705 (2d Cir. 1968); United States ex rel. Donham v. Resor, 436 F.2d 751 (2d Cir. 1971).

■ An applicant for discharge as a conscientious objector bears the burden

---

which contained a recommendation approving Arlen's application. It is unclear whether Chief Ligier is, in fact, the Commanding Officer, Sixth United States Army, or if, in the ordinary and regular course of events, he is the officer designated to perform this function on behalf of the Commanding Officer, Sixth United States Army. Be that as it may, there is no dispute concerning the procedural propriety of this recommendation.

5. On December 29, 1970, Arlen received an order to report for active duty at the United States Army Hospital, Ft. Polk, Louisiana. The reporting date was February 5, 1971. Upon consent of the parties these orders were stayed pending determination of this petition.

6. The Conscientious Objector Review Board will be abbreviated by the initials C.O. R.B.

of establishing at least a *prima facie* case. This burden is met when nonfrivolous allegations of fact are presented,[7] and no adverse demeanor evidence has been introduced or culled from the applicant's file. Lovallo v. Resor, 443 F.2d 1262, 1264 (2d Cir. 1971). See also United States v. Gearey II, 379 F.2d 915, 922 n. 11 (2d Cir. 1967); United States v. Burlich, 257 F.Supp. 906 (S.D. N.Y.1966); Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970).[8] Nevertheless, it may be determined that the applicant is not sincere. Lovallo v. Resor, *supra*, 443 F.2d at 1264, citing Witmer v. United States, 348 U.S. 375, 381–382, 75 S.Ct. 392, 99 L.Ed. 428 (1955). But a finding of insincerity must be predicated "upon objective evidence affording a rational basis for the Board's (C.O.R.B.) refusal to accept the validity of the applicant's claims. . . . (citations omitted) Absent such evidence, the military's administrative determination lacks a 'basis in fact' . . . ." Lovallo v. Resor, *supra*, 443 F.2d at 1264–1265.

Upon a review of the record the court finds that the attack upon Arlen's sincerity falls short of support in the basis in fact standard.

In Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970) the Court defined the standards to be used in evaluating conscientious objection. It was held that the conscientious objector exemption applied to ". . . all those whose consciences, spurred by deeply held moral, ethical, or religious beliefs, would give them no rest or peace if they allowed themselves to become a part of an instrument of war." 398 U.S. at 344, 90 S.Ct. at 1798. The required religious content for a conscientious objector exemption announced in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965) was totally eliminated in *Welsh*. The Court there stated:

"What is necessary . . . for . . . conscientious objection to all war to be 'religious' . . . is that this opposition to war stem from the registrant's moral, ethical, or religious beliefs about what is right and wrong and that these beliefs be held with the strength of traditional religious convictions. * * *

"If an individual deeply and sincerely holds beliefs that are purely ethical or moral in source and content but that nevertheless impose upon him a duty of conscience to refrain from participating in any war at any time, those beliefs certainly occupy in the life of that individual 'a place parallel to that filled by . . . God' in traditionally religious persons." 398 U.S. at 339–340, 90 S.Ct. at 1796.

The petitioner's application satisfies the test set forth in *Welsh, supra*.

Significantly, the interviewing Army chaplain who evaluated the basis and content of Arlen's beliefs, stated:

"His request for C.O. consideration does not rest upon any religious opinion, but rather on private moral code, sociological views. These views are concretely reflected in the endeavors which currently occupy his time and energy."

Additionally, the hearing officer affirmed this finding. He concluded:

"Lt. Arlen professes that his beliefs are not based on religious training as such but rather on conscience—a personal moral code. His reasons for being opposed to war are outlined in his application. However, the man's

---

7. Each of the officers who examined Arlen found him to be sincere.

8. These cases were decided in the context of conscientious objection claims raised by selective service registrants. It has long been established that the basis in fact standard is applicable in review of selective service cases by courts. Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 90 L.Ed. 567 (1946). This same standard is applied by the courts in review of denials of military discharge from in-service conscientious objection claims. D.O.D. 1300.6 text cited note 1, *supra.*

personal presentation and his dedication to those precepts are not adequately reflected in his written statement."

■ Furthermore, the interviewers independently concluded unequivocally that Lt. Arlen was sincere after observing him and judging his credibility. There seems to be no reason to distrust their judgment. No showing was made that they lacked objectivity or expertise, nor, for that matter, were they shown the error of their ways. What is at the heart of this matter is a disagreement by C.O.R.B. with its interviewing authorities. But it cannot override the decisions of its experts without the need of finding insincerity based on facts and statements in the record which point inescapably to such a conclusion. United States ex rel. Armstrong v. Wheeler, 321 F.Supp. 471, 480 (E.D.Pa.1970).

While it has been suggested that C.O.R.B. would be hard-pressed to overcome an interviewing officer's finding as to an applicant's sincerity (in the instant case the reasoned opinions of three independent interviewing officers), United States ex rel. Donham v. Resor, 436 F.2d 751, 754 (2d Cir. 1971); see United States ex rel. Tobias v. Laird, 413 F.2d 936 (4th Cir. 1969), the conclusion is not compelled that a contrary determination is without basis in fact.[9] To hold thus would be to divest C.O.R.B. of its statutory function. An adverse finding by C.O.R.B., however, will withstand attack only if it is predicated upon facts and statements which inevitably lead to that conclusion. United States ex rel. Armstrong v. Wheeler, supra, 321 F. Supp. at 480.

Here there is neither evidence, nor any plausible inference from the evidence to support a holding that Arlen's beliefs are not sincerely held. Reitemeyer v. McCrea, 302 F.Supp. 1210, 1221 (D.C.Md.1969). No showing has been made to justify the rejection of the considered opinion of the three qualified service professionals who interrogated Lt. Arlen eyeball to eyeball, to use the vernacular. C.O.R.B.'s attempt to impeach the findings of its own expert witnesses, Silberberg v. Willis, 306 F. Supp. 1013, 1021 (D.Mass.1969) aff'd in pertinent part, 420 F.2d 662 (1st Cir. 1970); Rosengart v. Laird, supra, 449 F.2d at 539 (Lumbard, J. dissenting) that Arlen was not a selective conscientious objector and was not motivated by pragmatism and expediency even though he filed late, files in the face both of the facts and law relevant to this case.

■ It is well settled in this circuit that late filing of a conscientious objector claim, standing alone, is not a sufficient basis on which to find that an applicant is not sincere. United States v. Gearey I, 368 F.2d 144, 149–150 (2d Cir. 1966) cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967); United States v. Bornemann, 424 F.2d 1343 (2d Cir. 1970). It was made explicit in United States v. Gearey II, 379 F.2d 915, 919 (2d Cir. 1967) that "belatedness of a claim may be a factor [but not the only one] in assessing its genuineness," citing United States v. Gearey I, supra, 368 F.2d at 150. Accord, Paszel v. Laird, 426 F.2d 1169 (2d Cir. 1970). The late maturation of Arlen's claim is not inconsistent with sincerity of belief. United States ex rel. Armstrong v. Wheeler, supra, 321 F.Supp. at 480; see, e.g. Silberberg v. Willis, supra, 306 F. Supp. at 1021–1022. "The realization that induction is pending, and that he may soon be asked to take another's life, may cause a young man finally to crystallize and articulate his once vague sentiments." United States v. Gearey I, supra, 368 F.2d at 150. Thus, conscientious objector applications following oth-

---

9. But cf. Talford v. Seaman, 306 F.Supp. 941 (D.C.Md.1969) and Reitemeyer v. McCrea, 302 F.Supp. 1210 (D.C.Md.1969), which suggest that if those who have had personal contact with the applicant find him sincere, there may be automatically no basis in fact for a contrary finding by C.O.R.B.

**188**

er requests for deferments or exemptions do not evidence, *per se*, a pragmatic and expedient approach to avoid active duty such as to compel a finding of insincerity. Capobianco v. Laird, 424 F.2d 1304, 1306 (2d Cir. 1970).

Similarly there is no showing that Arlen's beliefs were pragmatic merely because he set forth the sources of his beliefs pursuant to applicable Army regulation. (A.R. 135–25, par. 6(a) (2) (a)–(f)). To deduce from this that his views were not his own but were invented as a convenient expedient for escaping his military obligation is a delusion. Whether or not the views expressed by Arlen truly reflect his claimed conviction perhaps is open to question. But even if they do not there is nothing in the record to affirm a finding that he invented his conscientious objection beliefs by reason of having been influenced and directed by others. It has been held that ". . . the absence of a named source of influence is not a proper ground for decision." Kern v. Laird, *infra*, 335 F.Supp. at 829. It would be a very curious development indeed to permit an inference of insincerity from compliance with prevailing regulations.

■ Intertwined with the allegations against Arlen that he filed late and was prompted by pragmatism are the allegations that he is a selective conscientious objector and that he has made no sacrifices for his pacifist beliefs. It is not uncommon for one with deeply felt beliefs against war to examine one's views in order to decide whether they rise to a level of conscientious objection to all wars, until impelled to act by the imminence of active duty. United States v.

Gearey I, *supra*, 368 F.2d at 150. Arlen when faced with active duty specifically stated his opposition to the Vietnam War, but declared his opposition to war only in broad and loose language. Still there is nothing to show that he did not sincerely oppose all wars. Kern v. Laird, 335 F.Supp. 824, 829 (D.C.Colo.1971). "Logically, opposition to a particular war does not preclude opposition to all wars, . . ." Kent v. Laird, Dkt. No. 70–382–S (S.D.Cal., filed February 26, 1971). There is also nothing to show he made no sacrifices for his beliefs. The interviewing chaplain found that he did. In any event, it has been held that a person who has not actively made sacrifices because of his pacifist beliefs should not be disqualified, solely on that basis, from obtaining conscientious objector status. United States v. Gabris, 302 F.Supp. 235 (E.D.N.Y.1968); Kern v. Laird, *supra*, 335 F.Supp. at 829. The absence of activities "may reflect on an individual's sincerity; but it is a very different thing to require some 'expected' degree of activity in order to prove sincerity." United States v. Gabris, *supra*, 302 F.Supp. at 239.

■ In sum, Lt. Arlen has made out a prima facie case for a conscientious objector discharge. For the reasons stated, it is the opinion of this court that the decision of C.O.R.B. denying petitioner's request for discharge as a conscientious objector is without a basis in fact.

Accordingly, it is ordered that the petition of Jeffrey M. Arlen for a writ of habeas corpus be and the same hereby is ordered granted. Execution of the writ shall be stayed for a period of ten (10) days to afford an opportunity for appeal.