Alan S. KATZ

v.

COMMANDING OFFICER

v.

SECRETARY OF the AIR FORCE.

Civ. A. No. 73–1526.

United States District Court,
E. D. Pennsylvania.

Jan. 15, 1975.

G. Sander Davis, Philadelphia, Pa., for plaintiff.

Robert E. J. Curran, U. S. Atty., Kenneth A. Ritchie, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

GORBEY, District Judge.

The case has been submitted to the court for its determination upon the following agreed statement of facts:

1. Plaintiff, Alan S. Katz, is a Captain in the United States Air Force Reserves, presently in an inactive status, presently unattached to any Reserve unit, but assigned to the Air Force Reserve Personnel Center, Denver, Colorado.

2. Plaintiff graduated from Oberlin College in 1964 with a B.A. Degree, and in 1969, he received a M.D. Degree from the Chicago Medical School.

3. On October 4, 1969, plaintiff voluntarily enlisted in the United States Air Force in the Air Force Medical Early Commissioning Program (Berry Plan). Under this plan, medical doctors may enlist in the Air Force, and receive a deferment during their training period for internship and residency, and they may plan to go into the military service at the end of such training instead of facing the possibility of being drafted as a doctor at any time during this training.

4. From July 1969 to June 1970, plaintiff served as an intern in internal medicine at Temple University Hospital, Philadelphia, Pennsylvania. From July 1970 until June 1971, plaintiff was a resident in internal medicine at the same hospital, and from July 1971 until June 1973, plaintiff pursued fellowship training in pulmonary diseases at Tem-

ple University Hospital and Philadelphia General Hospital. Plaintiff is presently serving as a staff physician in pulmonary diseases at the Philadelphia General Hospital (Hahnemann Medical Services).

5. On August 24, 1972, plaintiff completed a "Specialty Training and Assignment Preference" form and returned this form to the Air Force Military Personnel Center (see nos. 13 and 14 infra).

6. On March 29, 1973, plaintiff submitted a written application for a discharge as a conscientious objector pursuant to Air Force Regulation 35-24 (C2), by mailing such request to defendant, Commanding Officer.

7. Thereafter, plaintiff received instructions from this defendant to complete the processing of such request in accordance with the Regulation by having three interviews. On May 15, 1973, petitioner was interviewed by Lieutenant Commander P. J. Sandler at the United States Naval Hospital, Philadelphia, Pennsylvania. On May 24, 1973, petitioner was interviewed by Lieutenant Commander John D. Griffith at the United States Naval Hospital, Philadelphia, Pennsylvania. On June 21, 1973, petitioner was interviewed by Lieutenant Commander Ruyle at McGuire Air Force Base, New Jersey.

8. On June 22, 1973, petitioner picked up a copy of LTC Ruyle's recommendation, and on July 3, 1973, sent a response to this recommendation to respondent Commanding Officer in accordance with AF Regulation 35-24 (C2).

9. On July 7, 1973, plaintiff filed a petition for a writ of habeas corpus, and on the same day moved this court for a temporary restraining order to prevent the defendants from ordering the plaintiff to active duty pending a decision on plaintiff's application for a discharge. An order granting such relief was signed by the Honorable Charles R. Weiner on July 7, 1973, and on July 16, 1973, by agreement of the parties and this court, the restraining order was extended until the Air Force could complete the processing of plaintiff's application for a discharge as a conscientious objector.

10. On December 3, 1973, respondents denied petitioner's request for a discharge as a conscientious objector with the comment:

"You have not satisfied the burden of proof in establishing your entitlement to conscientious objector status because there is substantial evidence to show that your beliefs are not sincerely held but are being used as an expedient to avoid active military service."

11. Thereafter, plaintiff filed an amended petition for a writ of habeas corpus based upon the denial of his application of a discharge as a conscientious objector.

12. Counsel for the defendant has previously filed, with this court, the entire record, and this constitutes the record that was before the Air Force Personnel Board and the Secretary of the Air Force when they decided to deny plaintiff's application for a discharge as a conscientious objector. Neither the Air Force Personnel Board nor the Secretary of the Air Force personally met with the plaintiff, and the only facts before them were those contained in this record.

13. On July 10, 1972, the Air Force Military Personnel Center sent to the plaintiff certain documents (which are attached to the agreed statement of facts and incorporated therein as Exhibit "A"). Included among these documents was a two page form entitled "Specialty Training and Assignment Preference", which was completed by the plaintiff and returned to the Air Force Military Personnel Center on or about August 22, 1972. (A copy of this form is attached to the agreed statement of facts and incorporated therein as Exhibit "B".)

14. Plaintiff was never advised by the defendants or any other member of the United States Air Force, that the "Specialty Training and Assignment Preference" form, dated August 24,

1972, would be included in the record prior to a decision by the Secretary of the Air Force.

A careful review of the record is required since the denial of conscientious objector status rests upon the contention of respondents that petitioner's "beliefs are not sincerely held but are being used as an expedient to avoid active military service."

■ Certain well established principles of law must be kept in mind in evaluating the exhibits in the record upon which the adverse determination was made. The test for determining conscientious objector status is not whether one is "opposed to all war, but whether [one] is opposed . . . to *participation* in war." Sicurella v. United States, 348 U.S. 385, 390, 75 S.Ct. 403, 406, 99 L.Ed. 436 (1955) (original emphasis). Also, if, as here "the issue is the registrant's [petitioner's] good faith belief, then there must be some inference of insincerity or bad faith." Witmer v. United States, 348 U.S. 375, 382, 75 S. Ct. 392, 396, 99 L.Ed. 428 (1955).

Since the decision of the Secretary of the Air Force is explained in the six page "Legal Review", prepared by the office of the Judge Advocate General, reference will now be made to that portion of the record utilized by the Secretary in reaching his conclusion that the conscientious objector beliefs were not sincerely held.

On page one, in stating a chronology of events, the "Legal Review" recites that "21 March, 1973—ARPC issued Captain Katz's active duty orders, to be effective 4 July, 1973, with a reporting date of 8 July, 1973, assigning him to Tinker Air Force Base, Oklahoma, with TDY in route". The next event: "29 March 1973, Captain Katz made application for discharge based on CO beliefs". The timing of these two events assisted the Secretary in concluding that "The dilatory revelation by Captain Katz to the Air Force of his CO views, under the circumstances described raises a le-

gitimate question as to Captain Katz's sincerity".

There is nothing in the record to support the conclusion that the *receipt* of active duty orders preceded the forwarding of his application for a discharge. When reference is made to the pleadings, however, it is alleged in paragraph 8 of the petition for writ of habeas corpus that the orders were received *after* his application for conscientious objector status was forwarded to respondent.

Even if we assume no inaccuracy as respects the two dates, any negative implication that could arise from the timing is negated by documentary evidence. The administrative record indicates that the reference letters were solicited in advance of the date on the active duty orders, 21 March, 1973, for the dates on the letters are as follows:

| | |
|---|---|
| Dr. Theodore Rodman | February 5, 1973 |
| Lt. Gerald Babbitt | February 27, 1973 |
| Professor Stanley Hopkins | March 2, 1973 |
| Stanley Ornstien | March 2, 1973 |
| Rabbi Herbert Stern | March 3, 1973 |
| Dr. Gilbert Bauman | March 5, 1973 |
| Dr. Sukhi Grover | March 8, 1973 |
| Rabbi Lewis Bogage | March 22, 1973 |
| Dr. Sidney Katz | March 25, 1973 |
| Mrs. Sissel Katz | March 25, 1973 |

These exhibits are sufficient on their face to dispel the conclusion that it was a receipt of orders that inspired him to seek conscientious objector status.

It is now timely to analyze each of the reference letters as their contents support or do not support respondents' finding of a lack of sincerity.

Dr. Theodore Rodman in his February 5, 1973 letter to the Commanding Officer, Air Force Reserve, Personnel Center, Denver, Colorado, points out that as a former member of the Medical Corps in the United States Army, who served ten years in the active reserves following the Korean War, he does not personally agree with Dr. Katz's viewpoint, "but I do respect him for the depth and sincerity of his convictions", and he "fits well into the kind of behavior pattern and has those normal convictions which I associate with a conscientious

objector". But even more significantly he writes: "I have known for a long period of time that he has felt a great deal of personal concern about his impending obligation to spend time in the Armed Forces as a physician in the light of his very strong feelings against the use of force in any form".

In Lt. Gerald Babbitt's letter of February 27, 1973, addressed to the Commanding Officer, he writes: "I have been asked by Dr. Alan Katz to write a letter supporting his request for conscientious objector status with the Air Force[1]". He continues: "Although I do not hold the same philosophical views as Dr. Katz, I feel that I can support his request, since I can appreciate his feeling from having known him for sometime now . . . his abhorrence of war and violence are the natural result of his unique demeanor and philosophy, the sincerity of which I have never been led to doubt".

The March 2, 1973 letter written by Professor Hopkins of Bowdoin College states: "To the best of my knowledge, Alan Katz's opposition to his own participation in the military is based on deeply held and sincere personal convictions".

In the March 3, 1973 letter of Rabbi Stern, he concludes: "I believe that Dr. Katz is honest and sincere in his desire to become a conscientious objector, and that this decision was arrived at after a great search of his soul".

Dr. Gilbert Bauman, in his letter of March 5, 1973, writes: "I am well aware that he has found it an increasingly difficult task to reconcile his principles with continued participation in the Armed Services . . . It is my sincere conviction that Dr. Katz's conscientious objection to serving in the Armed Forces is deeply felt and the honest result of his nonviolent thinking".

In the March 22, 1973 letter, Rabbi Lewis C. Bogage wrote: "I personally recommend that this highly qualified and worthy young man be granted the status of Conscientious Objector". Also, "I have been in counsel with him in helping him to achieve this decision. He has constantly reflected a sense of compassion and kindness with respect to every living thing and the status as description of Conscientious Objector fits this young physician in a valid and truthful way".

The March 25, 1973 letter of petitioner's father, Sidney Katz, M.D., clearly shows that the position of the petitioner, Dr. Katz, was not the direct result of active duty orders. The letter states: "In recent years and especially over the past six months I have observed Alan's mental anguish and spoken to him frequently regarding his attempt to resolve the painful conflict between his desire to be of service to his country and his ever increasing belief that service in the military will conflict with his conscience". Also: "While I served in World War II, I know that Alan could not, in clear conscience continue to participate in the military."

The letter of March 25, 1973 written by petitioner's wife becomes very significant since it shows a transition over a considerable period of time, to war and violence, to a final conviction that he could not conscientiously participate in war even as a medical officer. It is a lengthy and factual account of how her husband reached the decision "that he

---

1. For some strange reason this letter was not discounted as was the letter of Chaplain Griffith with respect to which we find on page 4 of the "Legal Review": "The 24 May 1973 letter submitted by Chaplain Griffith contained language more appropriate to a letter of reference than the impartial . review required by paragraph 9 of AFR 35–24, for the letter stated that he wrote the document, at Captain Katz's request, to be '. . . supportive of his claim for redesignation as a conscientious objector' ". Then follows the amazing conclusion "All of this has caused us to appropriately discount the weight to be accorded the foregoing conclusions and recommendations." One can only conclude that a record must be barren of significant evidence to support a conclusion when those charged with a serious responsibility discount a responsible person's evaluation because such language was "more appropriate for a letter of reference".

**26**

can no longer participate in the Armed Forces", although "prior to and during the early months of our marriage, Alan hoped that participation in the military would not conflict with his conscience."

We now turn our attention to the reports of the three persons who personally interviewed the petitioner prior to the decision of the Secretary of the Air Force.

On May 15, 1974, petitioner was interviewed by Lieutenant Commander P. J. Sandler, a medical officer, in accordance with Air Force Regulation 35–24. He wrote: "Discussion reveals that he always considered himself a nonviolent person and that he decided formally to seek conscientious objector status in February, 1973" and "This man's beliefs appear to be sincere and well thought out". As page four of the "Legal Review" points out, this opinion was discounted because it "went beyond the scope of the inquiry contemplated by AFR 35–24, since the psychiatrist did not have the benefit of the case file and could only arrive at his judgment because of superficial impressions arrived at through a short discussion with Captain Katz". The fact that the opinion was based on the interview itself cannot be treated logically as evidence of the lack of sincerity on the part of the petitioner. Reference has previously been made to the May 24, 1973 letter submitted by Chaplain Griffith (page 4 of the "Legal Review") in which he concluded after the interview, "without qualification, I support the claim which Dr. Katz is making . . . I find Dr. Katz to be a man of high personal integrity who sincerely seeks to fulfill the highest sense of life in response to devotion to his God." This was in his letter which he stated was written to be ". . . supportive of his claim for redesignation as a conscientious objector". Although little weight was given this opinion "because it contained language more appropriate to a letter of reference than to the impartial review required by paragraph 9 of AFR 35–24," it cannot justify the conclusion that petitioner was not

sincere in his claim to conscientious objector status.

Petitioner's final interview was conducted by Lieutenant Colonel Ruyle, Jr., who reported on June 21, 1973: "There is no question in my mind that Capt. Katz does indeed sincerely possess conscientious objections to war". Also: "It is apparent from Capt. Katz's own letter of application for discharge of 29 March 1973 that he was, in fact, opposed to war in any form from early life and long before he entered the Air Force, and this opposition is based on religious training and belief". After reviewing the evidence, the hearing officer concluded that the petitioner was "A conscientious objector to war" *before* he entered military service, and therefore is not now entitled to a classification of "conscientious objector". This, of course, indicates a failure to differentiate conscientious objection to war on the one hand and conscientious objection to participation in war on the other.

Consequently, aided by the eight page letter of rebuttal written by Captain Katz, the Judge Advocate General in preparing the "Legal Review" and after admitting on page 5 that "most of the persons who later reviewed the file adopted the same rationale in recommending disapproval" stated " . . . the hearing officer confused the statements relative to his nonviolent beliefs prior to 1 December 1969 with the assumption that he must have been a conscientious objector at that point of time. Of course, the two do not necessarily go together, and for that reason the hearing officer's rationale must fail".

Of course, the error of the hearing officer, and those who later approved his finding, cannot be treated as evidence of lack of sincerity on the part of the petitioner. Displaying a little ingenuity, the Judge Advocate General advanced a new theory, that although the evidence did not show that petitioner was a "conscientious objector" before entering the Air Force, his claim to that status is not sincere, but only motivated by a desire to escape active duty.

The sole act upon which that conclusion was reached is that under date of August 24, 1972, petitioner "sent a letter to AFMPC–SGSB stating he would be available for active duty on 1 July 1973", and requesting a "clinical assignment in pulmonary disease, medical center environment and opportunity for teaching residents and interns, proximity to major university center where wife can continue graduate studies in chemistry". Because many events which influenced petitioner to seek conscientious objector status occurred prior to the date of the communication in question, the conclusion was reached that if Dr. Katz was sincerely a conscientious objector he had to be one when the "letter was written and his failure to claim it at that time shows lack of sincerity."

Such a conclusion is just as inaccurate as the statement about petitioner sending a letter of availability for military service. The truth of the matter is that a Specialty Training and Assignment Preference form was sent to petitioner and it was filled out under date of August 24, 1972 and mailed as requested. There was no place on the form to claim conscientious objector status, even if, at that time petitioner's conscientious objection to participation in war, had crystallized. Nevertheless, the position is taken, arbitrarily, that a claim asserted subsequent to that date lacks sincerity. Such a conclusion is arbitrary because, as previously shown, his belief as to his conscientious ability to participate in war had not yet crystallized.

■ Having discussed the facts of the case as developed by the administrative record and pleadings, the next question is the scope of review by this court. It is now well settled that the judicial review of military determinations made by an official or review board is limited to whether there is a basis in fact in the record for the military determination. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1945). This is considerably different from the scope of review of other administrative agency determinations which require that such be supported by "substantial evidence". NLRB v. Columbian Enameling and Stamping Co., 306 U.S. 292, 59 S.Ct. 501, 83 L.Ed. 660 (1939).

In determining whether there is a basis in fact for the military determination, it has been held that a denial cannot be predicated upon mere speculation. United States v. Hesse, 417 F.2d 141 (8th Cir. 1969). There must be something in the record "which *substantially* blurs the picture painted by the registrant . . . ". Weber v. Inacker, 317 F.Supp. 651, 657 (E.D.Pa.1970) (opinion by Lord, C. J.).

"[T]he courts may properly insist that there be some proof that is incompatible with registrant's proof of exemption." Dickinson v. United States, 346 U.S. 389, 396, 74 S.Ct. 152, 157, 98 L.Ed. 132 (1953).

■ To support petitioner's claim to be a conscientious objector he must show that he was opposed to war in any form; Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971); that his opposition was based upon religious training and belief; Clay v. United States, *supra;* United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); that his objection is sincere. Clay v. United States, *supra*; Witmer v. United States, *supra*.

As previously shown, the denial by the Secretary rested solely upon the finding of a lack of sincerity. While the burden of proof as to sincerity is upon the petitioner, the Supreme Court of the United States has written:

"The registrant cannot make out a prima facie case from objective facts alone, because the ultimate question in conscientious objector cases is the sincerity of the registrant in objecting, on religious grounds, to participation in war in any form. In those cases, objective facts are relevant only insofar as they help in determining the sincerity of the registrant in his claim belief, purely a subjective question.

In conscientious objector cases, therefore, any fact which casts doubt upon the veracity of the registrant is relevant." Witmer v. United States, *supra,* 348 U.S. at pages 381, 382, 75 S. Ct. 392, 396, 99 L.Ed. 428.

Furthermore,

" . . . the government must show some hard reliable provable facts which would provide a basis for disbelieving the applicant's sincerity, or it must show something concrete in the record which substantially blurs the picture painted by the applicant." Smith v. Laird, 486 F.2d 307, 310, 10th Cir. 1973.

The three individuals who interviewed petitioner all found him to be sincere, although Lieutenant Colonel Ruyle, the final reviewing officer, concluded that petitioner's beliefs existed even prior to entrance in the military service on December 1, 1969, when he accepted his Berry Plan Reserve Appointment, and, therefore was now ineligible for conscientious objector status in spite of his sincerity. The reviewing authorities repudiated his rationale for his conclusion stating that it did not necessarily follow that because petitioner had nonviolent beliefs prior to accepting a military commission, that he must have been a conscientious objector at that time. This repudiation of the reasoning for the conclusion leaves intact the finding of Lieutenant Colonel Ruyle that petitioner was sincere in his beliefs at this time.

Thus, since all three of the interviewers found the petitioner to be sincere in his belief, there can be a contrary finding only if certain statements or facts in the record point inescapably to such conclusion. Arlen v. Laird, 345 F.Supp. 181 (S.D.N.Y.1972).

When the foregoing principles are applied to the facts of this case, the conclusion is irresistible that petitioner has met the burden of proof imposed upon him. It is also equally clear that

when the reasons assigned by the Secretary of the Air Force for denying conscientious objector status for lack of sincerity are examined, there is no basis in fact to support it. The Secretary has concluded that merely because many of the facts relied upon by petitioner existed prior to his claim of conscientious objector status, and that most of them predated the execution of the form on August 24, 1972, of his availability for active duty on July 1, 1973, that a subsequent claim for conscientious objector status must necessarily be insincere, and only for the purpose of evading a military assignment. This conclusion required the Secretary to ignore entirely the consistent claim that petitioner's views had not crystallized prior to that time, a claim justified by the contents of the letters previously referred to, submitted by petitioner in support of his claim.

It is apparent that the Secretary, and all those who reviewed the matter prior to his determination, have failed to note that:

" 'Crystallization' reflects a very subtle psychological process. For some persons just reading and discussing is enough to cause them to make the mental and emotional commitment to oppose participation in war. Other persons, like petitioner, need to go through the actual experience of combat training, the experience of learning to handle and to use weapons of destruction before their beliefs crystallize into commitment.

"Given the unprecise psychological process at work the court [Secretary] should be careful not to interpret such crystallization process in a way which denies relief to sincere conscientious objectors." Goodwin v. Laird, 317 F. Supp. 863, 866 (M.D.Cal.1970).

Stated differently:

"The fact that petitioner put off his decision until a 'late hour' is no basis for a finding of insincerity".

and

"It has always been regarded as consistent with spirituality and nobility of character for men of conscientious scruples to continue to examine a moral problem until the final hour of decision. . . . Silverberg v. Willis, 306 F.Supp. 1013, 1021 (D.Mass. 1969), rev'd on other grounds, 420 F. 2d .662 (1st Cir. 1970)." Goodwin v. Laird, supra, 317 F.Supp. footnote 4, page 866. *See also* United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4th Cir. 1969), reh. den. 412 F.2d 1137; Christenson v. Franklin, 456 F.2d 1277 (9th Cir. 1972); Finley v. Drew, 337 F.Supp. 76 (E.D.Pa.1972), aff'd, 455 F.2d 515 (3d Cir. 1972).

In a similar case, the Ninth Circuit held that there was no basis in fact for denial of a conscientious objector's claim where none of the Navy officials who personally saw and interviewed the petitioner doubted his sincerity, nevertheless, the Chief of Naval Personnel denied the application because the petitioner's beliefs became crystallized only after receiving 299 weeks of college education at the Navy's expense.

With respect to the timing of requests for conscientious objector status, one court has written:

"Indeed, the administrative procedures were devised for the very purpose of permitting the assertion of a claim of conscientious objection and proof of it, entitling the claimant to be discharged, when the objection was not formulated until after military service begun." United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4th Cir. 1969), reh. den., 412 F.2d 1137.

In summary, there are no facts which justify, under the preceding cases and the principles applicable thereto, the finding that:

"The dilatory revelation by Capt. Katz to the Air Force of his CO views, under the circumstances described, raises a legitimate question as to Capt. Katz's sincerity . . ."

To reach the conclusion of insincerity requires a disregard of the actual facts of this case, with attention paid primarily to the timing of the request for conscientious objector status. Such disregard is not permissible under the aforementioned authorities.

It follows therefore that the petition for a writ of habeas corpus is granted.